424 So.2d 246 (1982)
STATE ex rel. Alex ELAIRE
v.
Frank C. BLACKBURN, Warden.
No. 81-KH-2629.
Supreme Court of Louisiana.
November 29, 1982.
Rehearing Denied December 17, 1982.
*247 Paul B. Deal, New Orleans, for relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Eddie Knoll, Dist. Atty., Cliffe LaBorde, III, Asst. Dist. Atty., for respondent.
LEMMON, Justice.
The principal issue in this matter is whether relator was validly convicted of attempted second degree murder under the pertinent statutes which at the time of the offense defined second degree murder only as an unintentional killing committed in the course of certain enumerated felonies.[1] Because the trial court's denial of relator's postconviction application was contrary to our decision in State v. Booker, 385 So.2d 1186 (La.1980), and because some members of the court wished to reconsider that sharply divided decision, we granted certiorari. 411 So.2d 46.

I.
In the course of an early morning argument, relator shot the victim in the throat, because he believed that the victim had been instrumental in sending his brother to the penitentiary. Relator was tried on an indictment charging attempted first degree murder. The trial judge instructed the jury as to the essential elements of attempted first degree murder. Although he named the lesser offenses which were responsive verdicts listed in La.C.Cr.P. Art. 814, subd. A(2), he did not state the essential elements of the lesser offenses. He further stated the penalty for attempting an offense punishable by death or by life imprisonment, but he did not specify the penalty for attempted first degree murder or for any of the lesser offenses. Defense counsel did not request any special instructions on responsive *248 verdicts and did not object to the instructions or to the responsive verdicts given by the trial judge. The jury returned a statutorily responsive verdict of attempted second degree murder.
When relator's appeal was not timely, the trial court summarily denied a motion for an out-of-time appeal. This court ordered an evidentiary hearing to determine whether relator had waived his right to appeal, after which the motion was again denied.
Relator then filed the present application for postconviction relief, in which he contended that the evidence was insufficient to support the conviction. Because this due process contention is one of constitutional dimension, it is properly reviewable on a postconviction application. La.C.Cr.P. Art. 930.3; State ex rel Womack v. Blackburn, 393 So.2d 1216 (La.1981). After the trial court's denial, we granted the application.

II.
Although relator bases his complaint on insufficiency of evidence to support a second degree murder conviction, the problem occurred because the trial court erroneously instructed the jury that attempted second degree murder was a proper responsive verdict under the existing statutes and the evidence presented at trial. We ultimately decline to grant relator relief because he failed to object to the instructions concerning responsive verdicts, but we will discuss the Louisiana system of responsive verdicts and the recent decisions in this area of the law in an attempt to fit this decision into the emerging patterns.
A system of responsive verdicts involves benefits to both the prosecution and the defense. On the one hand, the system may benefit the prosecution by providing an alternative to acquittal when the evidence does not establish an essential element of the charged offense; on the other hand, the system may benefit the defense when the jury would prefer a choice between the drastic extremes of guilty of the charged offense and not guilty. Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Moreover, the "third option" insures the accused the full benefit of the reasonable doubt standard. Keeble v. United States, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).[2]
In Louisiana the accused is statutorily entitled to have the trial court instruct the jury as to the law on the charged offense and on any responsive offenses. La. C.Cr.P. Art. 803, 814, 815.[3] Therefore, when the accused requests and is refused an instruction on a lesser and included offense, or when the accused timely objects to the court's failure to give a responsive offense instruction to which he is statutorily entitled, the conviction may be reversed. See State v. Dufore, 424 So.2d 256 (La.1982), decided this date.
It is important to distinguish between those responsive verdicts which are lesser and included grades of the charged offense and those responsive verdicts which are not lesser and included offenses but are nevertheless included in La.C.Cr.P. Art. 814.[4] Lesser and included grades of the charged offense are those in which all of the essential elements of the lesser offense are also essential elements of the greater offense charged. State v. Cooley, 257 So.2d 400 (La.1972). Thus, the evidence which would support a conviction of the charged offense would necessarily support a conviction of the lesser and included offense. *249 However, in cases of the legislatively provided responsive verdicts which are not truly lesser and included grades of the charged offense, evidence which would support a conviction of the greater offense would not necessarily support a conviction of the legislatively responsive offense.[5] In such cases, the evidence may be insufficient to establish an essential element of the lesser crime which is not an essential element of the greater crime.
In State v. Peterson, 290 So.2d 307 (La. 1974), the defendant was charged with murder, and the jury returned a responsive verdict of manslaughter. Defendant argued that the evidence did not support the verdict because there was no proof of "sudden passion" or "heat of blood". La.R.S. 14:31. The court held that passion is not an essential element of the lesser offense of manslaughter, but rather is a mitigating factor, in the nature of a defense to the crime of murder, which need not be proved by the prosecution. However, the court in dicta stated that when the evidence is sufficient to support a conviction of the greater offense charged, the reviewing court need not determine whether the evidence supports the responsive verdict returned by the jury. Stated otherwise, the jury may return any legislatively provided responsive verdict, whether or not the evidence supports that verdict, as long as the evidence was sufficient to support a conviction of the charged offense.[6]
In State v. Dauzat, cited in footnote 5, this court, in the context of an attempted murder charge and an aggravated battery responsive verdict, restricted the Cooley and Peterson analysis to those cases in which the responsive verdict returned by the jury was truly a lesser and included grade of the charged offense.[7] Dauzat fired at and missed the victim, but the shot struck the victim's automobile. On appeal from a conviction of the legislatively responsive offense of aggravated battery, this court reversed and remanded for a new trial, because the evidence did not support a finding of the use of force or violence upon the person of the victim, although the evidence would have supported a conviction of attempted murder.
While this court did not expressly rule on the question, the decision strongly implies that the trial judge erred in giving an instruction which included a responsive verdict that could not be supported by the evidence presented during the trial. The trial judge in the Dauzat case undoubtedly thought that he was required to instruct the jury on a responsive verdict included in La.C.Cr.P. Art. 814, whether or not the evidence supported a verdict. See State v. Thibodeaux, 380 So.2d 59 (La.1980).
Act 763 of 1982, among other things, added Section C to Article 814. The article now accords discretion to the trial judge, on motion of either side, to refuse to instruct the jury on a responsive verdict included in Article 814, as follows:
"Upon motion of the state or the defense, the court may, in its discretion, exclude a responsive verdict listed in Subarticle A if after all the evidence has been submitted there is no evidence to establish *250 that responsive verdict." La.C.Cr.P. Art. 814 C. (Emphasis added.)
Thus, under the present law, a trial judge can now refuse to instruct the jury on a responsive verdict, even though the offense is listed in Article 814, if the court determines that there is "no evidence" to support such a verdict.[8]

III.
We now turn to a review of the Booker decision, relied on by relator. At the time of this crime, the only definition of second degree murder was a killing while the offender was engaged in the perpetration or attempted perpetration of a felony enumerated in the statute. Since no evidence whatsoever was introduced to establish the commission of any felony enumerated in the statute, relator contends that an essential element of the crime (the perpetration or attempted perpetration of an enumerated felony) was not proved. Citing Booker, relator argues that he must be discharged.[9] See United States v. Burks, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1978).
Booker was tried for attempted first degree murder under the same statutory scheme as was in effect in this case. Because the jury convicted Booker of attempted second degree murder, the issue presented by Booker's direct appeal was virtually the same as the issue in this postconviction proceeding.
In Booker, the court in a four-way split decision reversed the conviction and ordered a new trial. Justice Dennis' plurality opinion (joined by Justice Calogero) reasoned that the indictment did not give defendant sufficient notice of the essential elements of the offense for which he was eventually convicted.[10] This author's concurring opinion (joined by Chief Justice Dixon) reasoned that second degree murder at the time was an unintentional killing in the course of an enumerated felony and that there was no such crime as attempted second degree murder, inasmuch as an attempt is a specific intent crime and a person cannot specifically intend to do something unintentionally.[11] Justice Blanche, who was the author of the Booker opinion on original hearing, concurred in reversing the conviction but *251 dissented from remanding for a new trial, concluding that defendant should be discharged when the evidence does not support the conviction.[12] Justice Marcus was the lone dissenter from reversing the conviction, adhering to the view, expressed earlier in State v. Peterson, above, and other cases, that the jury may return any legislatively authorized responsive verdict, whether or not the evidence supports that verdict, as long as the evidence was sufficient to support a conviction for the offense charged.

IV.
We now adopt an approach (1) which recognizes the efficacy of the Cooley and Peterson analysis, but is nevertheless consistent with the Dauzat opinion and with the 1982 amendment to La.C.Cr.P. Art. 814, and (2) which recognizes the requirement that the defendant make a contemporaneous objection to the instruction on responsive verdicts in order to complain on appeal of the insufficiency of evidence supporting the responsive verdict.[13]
The theory expressed in Justice Marcus' dissent in Booker and earlier in the Peterson case (that a jury may return a legislatively approved responsive verdict, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to sustain a conviction of the charged offense) recognizes the legitimacy of a "compromise" verdict which does not "fit" the evidence, but which (for whatever reason) the jurors deemed to be fair. This view, which accords the jury the prerogative to return a verdict of a lesser offense which is not supported by the evidence, comports with the spirit of the responsive verdict article, since one major purpose of that article was to relieve the trial judge from having to review the evidence actually presented at the trial in order to decide which responsive verdicts should be given to the jury. See La.C.Cr.P. Art. 814 Official Revision Comment (a).
The 1982 amendment adding Section C to Article 814 now gives the trial judge discretion, on motion of either side, to exclude a responsive verdict which is not supported by the evidence. Therefore, even if the offense is legislatively designated as responsive by Article 814, the defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. If the court overrules the objection and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict.[14] However, if the defendant does not enter an objection (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury.
It would be unfair to permit the defendant to have the advantage of the possibility that a lesser "compromise" verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that *252 the evidence did not support the responsive verdict to which he failed to object. Therefore, at least when the defendant fails to interpose a timely objection to a legislatively responsive verdict, this court will not reverse the conviction if the jury returns such a verdict, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged.[15]
In this regard we distinguish State v. Williamson, 389 So.2d 1328 (La.1980), in which the trial judge, with the concurrence of the prosecution and the defense, instructed the jury in accordance with the new law that did not become effective until a few days after the crime. The evidence supported the jury's responsive verdict under the law existing at the time of the crime, but did not support the responsive verdict defined in the instruction to the jury. This court reversed, despite the absence of a contemporaneous objection, because the mutual error in defining the crime (of which Williamson was convicted) was so significant as to violate the fundamental requirements of due process.

V.
Significantly, defense counsel in the present case did not object (at a time when the trial judge could have taken corrective action) to the jury instruction which included attempted second degree murder as a responsive verdict. Furthermore, the evidence was clearly sufficient to establish guilt of the charged offense of attempted first degree murder. Under these circumstances, defense counsel very well may have decided not to object, as a matter of trial strategy, because he was satisfied to have the case go to the jury with an option to return a verdict reducing the grade of the offense despite the evidence presented.[16]
The jury's verdict was apparently a compromise decision to find defendant guilty of something less than attempted first degree murder. The jury chose the next highest offense from the list of responsive verdicts. While the evidence did not support a conviction of the offense chosen by the jury, the evidence would have supported a conviction of the charged offense. Because defendant did not object (because of an oversight or as a matter of trial strategy) to the instruction, which in effect informed the jury that it could properly return a verdict of attempted second degree murder, defendant cannot later complain that the evidence (which would have supported a conviction of the offense charged) did not support the lesser verdict chosen by the jury.[17]
*253 Accordingly, the judgment of the trial court denying defendant's application for postconviction relief is affirmed.
WATSON, J., concurs in the result and assigns reasons.
DIXON, C.J., and CALOGERO, J., dissent.
DENNIS, J., dissents with reasons.
WATSON, Justice, concurring in the result.
I concur in the result reached by the majority, but I respectfully decline to join in the opinion which consists largely of dicta.
With respect to State v. Booker, 385 So.2d 1186 (La.,1980), discussed by the majority, I note that I inadvertently indicated my dissent on rehearing was for reasons by Blanche, J., while I should have indicated that I agreed with the reasons given by Marcus, J.
DENNIS, Justice, dissenting.
The Supreme Court in Jackson v. Virginia, 443 U.S. 309, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) created a new rule of lawthe constitution now prohibits conviction of any person except upon proof sufficient that "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 99 S.Ct. at 2789, 2793. Before this, the federal courts had applied to state convictions the "no evidence" rule of Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654, which held that a conviction based upon a record wholly devoid of any relevant evidence of a crucial element of the offense charged is constitutionally infirm. But the Jackson court recognized that "[t]he Thompson `no evidence' rule is simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt" 99 S.Ct. at 2789 and its application "to assess the validity of a criminal conviction after Winship could lead to absurdly unjust results." Id. 99 S.Ct. at 2790, n. 14. In In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the high court explicitly held "that the Due Process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Id. at 364, 90 S.Ct. at 1072.
Accordingly, Due Process now requires a reasonable sufficiency of evidence of every fact upon which a criminal defendant's conviction is based. If this were not the case, a legislature would have almost complete discretion to make any crime a responsive verdict to a charged offense. Compromise verdicts having no relation to the evidence could be returned and not violate the Due Process clause. Even a casual reading of Winship and Jackson and the reasons given there for making the beyond-a-reasonable-doubt rule part of the constitution and a tenet of federal habeas review convinces one this was not the high court's intention. For example, the Jackson court noted at footnote 10 that "[t]he power of the factfinder to err upon the side of mercy, however, has never been thought to include a power to enter an unreasonable verdict of guilty." 99 S.Ct. at 2788 n. 10, citing United Brotherhood, etc. v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973. Cf. Capital Traction Co. v. Hof, 174 U.S. 1, 13-14, 19 S.Ct. 580, 585-586, 43 L.Ed. 873 (1899).
This court has habeas powers and obligations of its own. La. Const. art. 5 § 2. We must entertain a claim by a prisoner that he or she is being held in custody in violation of the constitution or laws of the United States or of this state. C.Cr.P. art. 351 et seq. Under the Winship and Jackson decisions, it is clear that a prisoner who alleges that the evidence in support of his convictions cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim. Jackson v. Virginia, 99 S.Ct. at 2790. Thus, it follows that such a claim is cognizable in a habeas proceeding in this court.
*254 The majority correctly concludes that the evidence in this case does not support a conviction for attempted second degree murder. However, it refuses to reverse the conviction based on insufficient evidence because the defendant failed to object to the trial judge's instruction to the effect that attempted second degree murder could be a proper verdict. This amounts to a failure by this court to perform its duty under habeas corpus upon a clear showing that a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. The majority's decision directly conflicts with Winship and Jackson. It also contravenes principles underlying cases of this court which have held that insufficiency of evidence can be recognized even on the court's own motion. See, State v. Raymo, 419 So.2d 858 (La.1982), State ex rel Womack v. Blackburn, 393 So.2d 1216 (La.1981). "[I]f the error comes to the court's attention, the court should recognize it, because no one should remain in prison if he has been convicted on insufficient evidence." State ex rel Womack v. Blackburn, 393 So.2d 1216, 1220 n. 1 (Lemmon, J., concurring.).
Therefore, I respectfully dissent.
LEMMON, Justice, concurring in the denial of the rehearing.
The decision in State ex rel Womack v. Blackburn, 393 So.2d 1216 (La.1981), certainly stands for the propositions that no one who has been convicted on insufficient evidence should remain in the penitentiary and that the issue may be raised (even for the first time) in a postconviction application. However, the issue in Womack was whether the evidence was sufficient to support a verdict either of guilty as charged or of guilty of any lesser included responsive offense.[1]State v. Byrd, 385 So.2d 248 (La. 1980); La.C.Cr.P. Art. 821.
In the present case, if the jury had returned a verdict of guilty as charged, then there would be no doubt that the evidence supported the jury's findings as to all essential elements of the charged crime. However, the jury in the present case chose to return a responsive verdict, and we affirmed the conviction (1) because the evidence would have supported a conviction of the charged offense and (2) because the defendant did not object (purposely or inadvertently) to the erroneous instruction on the responsive offense.[2]
NOTES
[1] At the time of the offense, La.R.S. 14:30 and 30.1, defining first and second degree murder, provided as follows:

§ 30 "First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.
"Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit or [sic] parole, probation, or suspension of sentence in accordance with the recommendation of the jury."
§ 30.1 "Second degree murder is the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of [enumerated felonies] even though he has no intent to kill or to inflict great bodily harm.
"Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of probation or suspension of sentence and shall not be eligible for parole for forty years."
[2] As the Court stated in the Beck case:

"Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." 447 U.S. at 634, 100 S.Ct. at 2388.
[3] La.C.Cr.P. Art. 803 provides in part:

"When a count in an indictment sets out an offense which includes other offenses of which the accused could be found guilty under the provisions of Article 814 or 815, the court shall charge the jury as to the law applicable to each offense."
[4] In La.C.Cr.P. Art. 814, the Legislature has enumerated specific responsive verdicts for the most common crimes in order to resolve conflicts in judicial decisions as to which verdicts were responsive. See Official Revision Comment (a).
[5] For example, aggravated battery is listed in Article 814, subd. A(4) as a responsive verdict to the offense of attempted first and second degree murder. See La.C.Cr.P. Art. 814, subd. A(2) and (4). However, attempted murder does not include an essential element of aggravated battery, namely the use of force or violence upon the person of the victim or the intentional administration of a poison or noxious substance. Compare La.R.S. 14:30 and 30.1 with La.R.S. 14:33 and 34. Neither does an attempted murder require the use of a dangerous weapon. See La.R.S. 14:2(3). See also State v. Dauzat, 392 So.2d 393 (La.1980).
[6] In Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), a plurality of the Court criticized the Louisiana responsive verdict system, in the context of a capital case with a mandatory death sentence, stating that the system "plainly invites the jurors to disregard their oaths and choose a verdict for a lesser offense whenever they feel the death penalty is inappropriate", even if the lesser verdict is not supported by the evidence.
[7] In Peterson all of the elements of manslaughter were included in the greater offense of murder. (Note that the manslaughter statute includes both intentional killings and misdemeanor manslaughter).
[8] Interestingly, the Legislature used the phrase "no evidence", ever after the decision in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), replaced that test for sufficiency of evidence with a different standard. We need not decide in this case whether to construe the standard in Article 814 C as fulfilled when the evidence would be insufficient, as a matter of law, to support a verdict of guilty of the responsive offense. See the standard used in La.C.Cr.P. Art. 821, providing for postverdict judgment of acquittal. We note, however, that the 1982 amendment to Article 814 has the effect of authorizing the trial judge to grant a judgment of acquittal to responsive verdicts which are not supported by the evidence.
[9] Booker was not discharged, as is necessary when a conviction is reversed because of insufficient evidence. Rather, this court on rehearing ordered a new trial because of trial court error in the course of the proceedings.
[10] The indictment alerted defendant only that the state would endeavor to prove that he attempted to kill and made no mention of any other felony. A majority of the court, however, is apparently satisfied that the responsive verdict article (La.C.Cr.P. Art. 814) gives defendant sufficient notice that he must also prepare to meet the elements of enumerated responsive offenses. See State v. Dauzat, above.
[11] Subsequently, in State v. Stewart, 400 So.2d 633 (La.1981), this court (with three justices pro tempore participating) upheld a verdict of attempted second degree murder under circumstances in which the evidence was sufficient to establish the attempted commission of one of the enumerated felonies.

The author of the present opinion concurred in Stewart, despite his view expressed in Booker. The author is now convinced that there is such a crime as attempted second degree murder (as then defined), since the definition of attempted second degree (felony) murder may reasonably be construed to include the conduct of one who either does or does not specifically intend to kill, when the killing occurs during the commission of an enumerated felony. La. R.S. 14:30.1 defined (and still defines) second degree murder as a homicide committed in the course of an enumerated felony, "even though" the offender had no specific intent to kill. Therefore, it is reasonable to assume that use of the words "even though" (rather than "when") signified a legislative intent for the statute to apply when the homicide was either intentional or nonintentional.
[12] Justice Watson joined in Justice Blanche's dissent.
[13] The Dauzat opinion does not reveal whether the defendant made a contemporaneous objection to the jury instruction or to the list of responsive verdicts.
[14] Of course, this applies only to a responsive verdict that is listed in Article 814 but is not truly a lesser and included grade of the charged offense.

Furthermore, if the prosecution objects (and the objection is not joined by defendant), and this objection is overruled, defendant should not, for the reasons stated herein, be permitted to complain on appeal of the insufficiency of evidence to support the responsive offense, as long as the evidence was sufficient to support the offense charged. To hold otherwise would permit defendant to gamble on getting the benefit of the lesser verdict (and acquittal of the offense charged) and then complain for the first time on appeal that the jury should not have been permitted to consider the unsupported responsive verdict.
[15] Since this decision seeks to resolve the Booker impasse on the basis of a failure to object timely, we do not necessarily imply that we will not continue to apply Dauzat when there is a timely objection and the trial judge fails to correct the error.
[16] In this regard, it is important to note that the trial judge failed to instruct the jury on the essential elements of the legislatively responsive offenses and that defense counsel raised no objection to his failure to do so.
[17] Had defendant assigned as error the substantial (but unobjected to) error committed by the trial court in failing to accurately define the responsive offenses, we might apply the test set forth in our recent opinion in State v. Mart, 419 So.2d 1216 (La.1982). There, the court said:

"[T]his court has recognized exceptions to the rule's seemingly inflexible assertion that trial error, unless contemporaneously objected to, cannot be asserted on appeal. In State v. Williamson, 389 So.2d 1328 (La.1980), fundamentally erroneous misstatements of the essential elements of the charged offense were found to require reversal, despite the defendant's failure to raise an objection in the trial court. In that case this court apparently adopted a view, not totally unlike the federal `plain error' approach, that such fundamentally incorrect jury instructions so affect the fairness of the proceedings and the accuracy of the factfinding process that due process of law requires reversal, even in the absence of compliance with legislative procedural mandates."
* * * * * *
"When counsel for defendant fails to comply with the contemporaneous objection rule, even in the case of a fundamentally erroneous instruction on the elements of an offense, it is not unreasonable to require defendant to carry the burden of satisfying this court that the procedural default (that is, the failure to raise the complaint properly) was excusable and was not the result of trial strategy." 419 So.2d at 1219.
Compare Engles v. Issac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); U.S. v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).
[1] The only assignment of error in Womack's application for postconviction relief was that the evidence did not support the conviction of guilty as charged. Accordingly, one may presume that the jury was properly instructed as to all of the elements of the charged offense. (There were no objections to the instructions, which were therefore not transcribed for the record on appeal.)
[2] The instruction regarding the responsive offenses did not define the elements of those crimes. Thus, it appears that the verdict was a legislatively ordained "compromise".