KLEES, Judge.
On January 16,1986, a grand jury indicted the defendant Michael Lewis for second degree murder of Larry Stephens which occurred on August 30, 1983. After a two day trial a twelve person jury found the defendant guilty of manslaughter, a violation of R.S. 14:31. The trial court sentenced the defendant to serve twenty years at hard labor and the defendant now appeals contending that the evidence was insufficient to convict him.
FACTS:
In the early morning hours of August 30, 1983, the defendant Michael Lewis called the police to report the murder of Larry Stephens. Detective Norman Pierce of the New Orleans Police Department investigated. He found Stephens’ body lying on his back, face up, in the living room of his home. A trail of blood led to the bedroom and kitchen; a gun belonging to the victim was on the mantel. The defendant was present. Pictures of the scene were taken and introduced into evidence including a photograph of the defendant. The defendant was wearing shorts and slippers. His feet and shoes were splattered with blood. A hypodermic needle syringe was found in the toilet. The defendant spoke to the police officer who after a while suspected him, and advised the defendant of his Miranda warnings. The defendant willingly gave a statement to the officer. The defendant stated that he was with the victim at his home at approximately 3:00 a.m. where they “shot up some cocaine”. The two men conversed, the victim telling the defendant about a telephone argument he had earlier that evening with his wife. The defendant left the victim’s residence, went to his home and returned about ten minutes later to get a valium so he could go to sleep. When he arrived back at the victim’s home, the front door was partially opened. The defendant found the victim lying on the floor. He removed a gun from the victim’s hand, placed it back and turned the body over to try to locate a wound. He then left the house and telephoned the police.
Dr. Monroe Samuels, a pathologist for the Orleans Parish Coroner’s Office performed an autopsy on Stephens’ body. He classified the victim’s death as homicide. The victim had been shot in the back. The bullet wound sliced from back to front in an upward direction. The bullet was recovered from under the skin on the right side of the chest. The wound was smoke stained, indicating that the gun was fired from several inches away. The pathologist testified his findings were inconsistent with suicide, although he did not entirely rule out the possibility. The pathologist indicated that in order to inflict such a wound upon himself, a person would have to hold the gun upside down and put his thumb through the trigger guard. On the witness stand the pathologist demonstrated, using his left hand. He thought that the task would be impossible using his right hand. The victim’s body also contained evidence of cocaine use.
The defendant was arrested for the crime soon after the incident but the district attorney’s office refused the charges due to insufficient evidence. On October 11, 1985, more than two years after the incident, Detective Pierce arrested the defendant pursuant to an arrest warrant on the basis of a statement given by one Clint Greely.
The defense stipulated that a ballistics expert, who had examined the gun and the bullet removed from the body, would have testified that the gun had fired the bullet. A crime lab technician testified that a test for gunpowder residue was performed on both the defendant and victim with nega *127 tive results. However, she testified that the test was not reliable.
Clint Greely, an Army private stationed at Port Dixon, New Jersey, testified that on the night of the incident, he was on his way from work to his aunt’s house, where he sometimes resided. He had taken a bus from Kenner to Claiborne Avenue. He was walking down the street when he heard a boom. Three or four seconds later, he saw a man he identified as the defendant run from the victim’s house. He had a gun in his hand. The man looked at Greely but kept on running. Frightened, Greely ran around the comer. Greely testified that he had grown up in the neighborhood and knew the victim, his house, and the defendant for “all my life”. He stated that at the time he saw the defendant running from the victim’s house he was wearing a white shirt and slacks or jeans. He was positively certain the defendant was the man he saw running from the victim’s house. Greely testified further that he failed to come forward as a witness earlier because he had heard that the police arrested the defendant and he did not want to get involved. However, after he spoke to the victim’s brother months later, he decided to come forward and testify.
The victim’s wife, Sandra Stephens, also testified. She stated that her husband gave no indication to her that he wanted to commit suicide. No witnesses for the defense testified.
A review of the record for errors patent revealed none.

Assignment of Error

By the defendant’s sole assignment of error, he contends that the evidence was not sufficient to convict him. The defendant argues that all of the evidence was circumstantial and the State failed to exclude every reasonable hypothesis of innocence. R.S. 15:438. He argues that the evidence could reasonably support the theory that the victim committed suicide, relying on State v. Shapiro, 431 So.2d 372 (La.1982). In Shapiro, the victim had earlier attempted suicide by swallowing pills while visiting the defendant in the hospital. After the defendant thwarted her attempt, she left the hospital in an excited state. The defendant sought a hospital discharge and followed the victim home. After others present in the home departed leaving the defendant and the victim alone, the victim was shot in the head and later died. In reversing the defendant’s conviction, the Louisiana Supreme Court concluded that the evidence tended to show that the defendant fired the gun and also similarly tended to prove that the victim fired it. The court concluded that the State did not exclude the reasonable hypothesis that the victim’s death was suicide. Id. at 388.
In the present matter, the victim had not attempted suicide, nor did the victim’s wife believe that the victim had any suicidal tendencies. Unlike Shapiro, who was shot in the head, the present victim was shot in the back, a wound which the pathologist considered very unlikely to be self inflicted.
In State v. Porretto, 468 So.2d 1142 (La.1985), the Supreme Court clearly enunciated the correlation between the test for sufficiency of the evidence and the rule of circumstantial evidence.
The constitutional standard for testing the sufficiency of evidence, enuni-cated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This is not a purely separate test from the Jackson stan-dared to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis for the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Wright, 445 So.2d 1198 (La.1984). Id. at 1146.
*128 Moreover, the defendant was charged with second degree murder and the jury returned the legislatively responsive verdict of manslaughter. C.Cr.P. art. 814(A)(3). A jury may return a legislatively provided responsive verdict, whether or not the evidence supports that verdict, as long as the evidence was sufficient to support a conviction of the charged offense. State ex rel. Elaire v. Blackburn, 424 So.2d 246, 249 (La.1982), explaining State v. Peterson, 290 So.2d 307 (La.1974). See also State v. Schrader, 518 So.2d 1024 (La.1988).
In the present matter, the victim was shot in the back. A passerby heard the shot and within seconds saw the defendant run from the victim’s house with a gun. Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. R.S. 14:30.1. Under these facts we conclude that viewing the circumstantial evidence in accord with the Jackson standard, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt, while excluding every reasonable hypothesis of innocence.
Accordingly for the reasons expressed above, the conviction and sentence are hereby affirmed.
AFFIRMED.