# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2024 KA 0402

## STATE OF LOUISIANA

## VERSUS

## RICARDO D. McGOWAN

*Judgment Rendered:* FEB 2 8 2025

\*\*\*\*\*\*\*\*

**Appealed from the**
**22nd Judicial District Court**
**In and for the Parish of Washington**
**State of Louisiana**
**Case No. #22 CR7 150300**

**The Honorable Alan A. Zaunbrecher, Judge Presiding**

\*\*\*\*\*\*\*\*

| | |
|---|---|
| J. Collin Sims<br>District Attorney<br>Franklinton, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Matthew Caplan<br>Assistant District Attorney<br>Covington, Louisiana | |
| Barry W. Bolton<br>Bogalusa, Louisiana | Counsel for Defendant/Appellant<br>Richard McGowan |

\*\*\*\*\*\*\*\*

**BEFORE: McCLENDON, C.J., LANIER, and BALFOUR, JJ.**

**LANIER, J.**

The defendant, Ricardo D. McGowan, was charged by amended bill of information with distribution of fentanyl (Count 1), a violation of La. R.S. 40:967(A) and (B)(4);[1] possession with intent to distribute fentanyl (Count 2), a violation of La. R.S. 40:967(A) and (B)(4); three counts of illegal carrying of weapons while in possession of a Controlled Dangerous Substances (CDS) (Counts 3, 4 & 5), a violation of La. R.S. 14:95(E); and transactions involving proceeds from drug offenses (Count 6), a violation of La. R.S. 40:1041(A) and (E) (docket number 150300).[2] The defendant pled not guilty on all counts. Following a jury trial, he was found guilty of the responsive offenses of possession of fentanyl (Count 1) and three counts of attempted illegal carrying of weapons while in possession of a CDS (Counts 3, 4 & 5). He was found not guilty of possession with intent to distribute fentanyl (Count 2) and transactions involving proceeds from drug offenses (Count 6).

The trial court sentenced the defendant to four years imprisonment at hard labor on the possession of fentanyl conviction (Count 1), and two years at hard labor on each of the attempted illegal carrying of weapons while in possession of a CDS convictions (Counts 3, 4 & 5). The trial court ordered the sentence on count three to run consecutive to the sentence imposed on count one and ordered the remaining sentences to run concurrently with each other and the sentences imposed on counts one and three. After the jury trial concluded, the trial court ruled from the bench and found the defendant guilty of possession of drug paraphernalia (Count 1) and possession of marijuana (less than fourteen grams) (Count 3),

---

[1] The State listed the wrong subparagraph of the statute in the bill of information.

[2] The State separately charged the defendant with three misdemeanor offenses (docket number 150270) arising from the same events underlying the felony charges in this case.

2

misdemeanors in violation of La. R.S. 40:1023(C) and 40:966(C), respectively.[3] The court sentenced the defendant to three days in parish jail on both counts and his misdemeanor sentences were deemed satisfied. The defendant moved for reconsideration of the sentences, which the trial court denied.

The defendant now appeals, designating four assignments of error that challenge the sufficiency of the evidence to sustain his felony convictions and the misdemeanor possession of marijuana conviction.[4] The State argues there is no merit to the defendant's claims that the evidence was insufficient to support the felony convictions. The State concedes, however, that the evidence was insufficient to support the misdemeanor conviction for possession of marijuana where the record shows the only evidence concerning marijuana was an officer's testimony about a "green, leafy substance" he described as suspected marijuana. Based on the State's concession, we reverse the misdemeanor conviction for possession of marijuana in docket number 150270 and vacate the sentence for said conviction. We affirm the defendant's felony convictions and sentences in docket number 150300.

## STATEMENT OF FACTS

The Washington Parish Sheriff's Office ("WPSO") narcotics division launched an investigation with the defendant as their target after receiving information from a confidential source ("CS") that he was involved in the sale of

---

[3] The defendant was found not guilty of illegal use of a controlled dangerous substance in the presence of a person under the age of seventeen (Count 2).

[4] The proper procedure for seeking review of a misdemeanor conviction is an application for writ of review asking this court to exercise its supervisory jurisdiction. See La. Code Crim. P. art. 912.1(C)(1). In the instant case, although the misdemeanor offenses and the felony offenses were charged in separate bills of information, they arose from the same events and constitute a single case. Rather than requiring the defendant to file a separate application for supervisory writ for his unappealable misdemeanor convictions, the instant matter is an example of cases intertwined to the point that the interests of justice and judicial economy are better served by considering the matters together. See e.g., **State v. Barnett**, 24-69 (La. App. 5 Cir. 10/30/24), 2024 WL 4613047, *3 (unpublished); **State v. Jones**, 12-640 (La. App. 5 Cir. 10/30/13), 128 So.3d 436, 441-442.

illegal drugs. WPSO set up a controlled buy with the defendant. The controlled buy produced evidence that the defendant sold Fentanyl. WPSO secured an arrest warrant and a search warrant for the defendant's home and car based on the evidence procured during the controlled buy. During the search of the defendant's home and car, fentanyl, money, scales, and weapons were located. The defendant did not testify at trial, and the CS died prior to trial.

## DISCUSSION

On appeal, the defendant argues the evidence was insufficient to support his felony convictions in this case and the misdemeanor conviction for possession of marijuana. Specifically, he argues the jury failed to properly weigh the sufficiency of the evidence when it employed speculation to determine guilt and when no proof was offered beyond a reasonable doubt by the State to support any of the charges.[5] The defendant argues because he was arrested in his car on a public street, the State failed to prove that he constructively possessed the narcotics and weapons found in the home on Torrence Drive. He further argues the State offered no proof of his residency and failed to prove that he resided at the Torrence Drive address.

## SUFFICIENCY OF THE EVIDENCE
## FELONY CONVICTIONS

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

_____

[5] The proper procedural vehicle for raising the sufficiency of the evidence is by first filing a motion for post-verdict judgment of acquittal before the trial court. La. Code Crim. P. art. 821. The record does not reflect the defendant filed such a motion. Nevertheless, we will consider a claim of insufficiency of the evidence that has been briefed pursuant to a formal assignment of error. **State v. Lynch**, 94-0543 (La. App. 1 Cir. 5/5/95), 655 So.2d 470, 480, writ denied, 95-1441 (La. 11/13/95), 662 So.2d 466.

4

reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. **State v. Landry**, 2019-0486 (La. App. 1 Cir. 2/21/20), 297 So.3d 8, 14. In conducting this review, we must also be mindful of Louisiana's rule as to circumstantial evidence, *i.e.,* "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; see **State v. Ferguson**, 2015-0427 (La. App. 1 Cir. 9/18/15), 181 So.3d 120, 129, writ denied, 2015-1919 (La. 11/18/16), 210 So.3d 282.

Absent a contemporaneous objection to the giving of instructions on a responsive verdict, a defendant cannot complain if the jury returns a legislatively approved responsive verdict, even where there is insufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. See La. Code Crim. P. art. 814(C). In such a case, a jury has the right to "compromise" between the charged offense and a verdict of not guilty. **State v. Miller**, 2012-0581 (La. App. 1 Cir. 11/2/12), 2012 WL 5387681, *4 (unpublished), writ denied, 2012-2675 (La. 8/30/13), 120 So.3d 256.

In **State ex rel. Elaire v. Blackburn**, 424 So.2d 246, 251 (La. 1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the Louisiana Supreme Court recognized the legitimacy of a "compromise verdict," *i.e.,* a legislatively approved responsive verdict that does not fit the evidence, but that (for whatever reason) the jurors deem to be fair, as long as the evidence is sufficient to sustain a conviction for the charged offense. The Supreme Court found that this view, which accords the jury the prerogative to return a verdict of a lesser offense which is not supported by the evidence, comports with the spirit of

5

the responsive verdict article, since one major purpose of that article is to relieve the trial judge from having to review the evidence actually presented at the trial in order to decide which responsive verdicts should be given to the jury.[6] See **Elaire**, 424 So.2d at 251.

Thus, even if the offense is legislatively designated as responsive by Article 814, the defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. If the court overrules the objection and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict. However, if the defendant does not enter an objection (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury. *Id.*

In this case, defense counsel did not object to the jury instructions on the responsive verdicts for the charged offenses, which included possession of fentanyl (Count 1), see La. Code Crim. P. art. 814(A)(56), and attempted illegal possession of a firearm while in possession of a CDS (Counts 3-5). See La. Code Crim. P. art. 815.[7] Because it is possible that the verdicts represented a compromise, and the defendant in his brief does not challenge the evidence insofar as it supports the greater crimes charged, out of an abundance of caution, we will conduct an analysis of the evidence supporting the convictions for distribution of fentanyl and

---

[6] See La. Code Crim. P. art. 814 Official Revision Comment (a).

[7] In all cases not provided for in Article 814, the following verdicts are responsive: (1) Guilty, (2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense is a misdemeanor, or (3) Not guilty.

illegal possession of a firearm while in possession of a controlled dangerous substance. See **State v. Ostarly**, 2022-1004 (La. App. 1 Cir. 5/18/23), 2023 WL 3914914, *2 (unpublished).

At the trial of this matter, the following testimony was presented regarding the controlled buy involving the defendant. The WPSO used Brian McCrory, a friend of the CS, to set up a controlled buy.[8] On the morning of June 20, 2022, WPSO Detectives Kyle Stogner and Allen Dupre met with the CS. They searched him, gave him $100.00 in marked money to purchase the illegal drugs, and placed audio and video recording devices on his person and inside his vehicle. The CS left the meeting to pick up McCrory at his residence, and Det. Stogner left to set up surveillance at the defendant's residence.

When the CS arrived at McCrory's residence, he told him he wanted to buy "boyd," and McCrory momentarily left to call the defendant to arrange the drug deal. A few minutes later, McCrory returned to the vehicle and told the CS the defendant would meet them at the JZ Quick Stop on Highway 21 at City Limits Road in ten minutes.[9] After the CS relayed the location of where the buy was to take place, Det. Dupre immediately went to the JZ Quick Stop and set up surveillance. The defendant left his residence driving a black Volkswagen Passat and arrived at the JZ Quick Stop a few minutes later. He exited his vehicle and entered the JZ Quick Stop. The CS and McCrory arrived at the Quick Stop. A few minutes later, the defendant exited the store empty-handed and returned to his vehicle. At that point, McCrory exited the CS's vehicle and entered the front passenger seat of the defendant's vehicle. Det. Dupre could see the two inside the

---

[8] The testimony adduced at trial shows the defendant would not sell directly to the CS and that McCrory had an extensive narcotics history.

[9] During trial, several officers referred to the JZ Quick Stop as the "Jay Z Quick Stop" or the "JZ Truck Stop."

7

vehicle, but he could not see their hands. He observed McCrory exit the defendant's vehicle a few minutes later, return to the CS's vehicle, and leave the Quick Stop.[10]

The CS drove McCrory back to his residence and then left to meet up with the detectives. Det. Dupre collected the drugs from the CS, which he suspected was heroin, placed it into a yellow envelope, and turned off the surveillance equipment.[11] Subsequent chemical testing revealed that the contents inside the envelope contained caffeine and fentanyl. Following the controlled buy, Det. Stogner obtained warrants to arrest the defendant and to search his vehicle and his home.

On June 22, 2022, Det. Stogner set up surveillance at the defendant's residence. WPSO Captain[12] Brent Goings notified the task force when he observed the defendant and his wife, Patrice Brumfield, get into their black Volkswagen Passat and drive toward Highway 21. When Det. Stogner executed a traffic stop on the vehicle, the defendant was driving and Ms. Brumfield was riding as a passenger.[13] Det. Stogner informed the defendant he had a warrant for his arrest, advised him of his **Miranda** rights,[14] and detained him. Captain Goings traveled to the scene of the stop to assist with the search of the defendant's vehicle. He found a black digital scale on the driver's side floorboard with white residue on it and a 9 millimeter pistol between the center console and the driver's side seat. Det.

---

[10] Det. Dupre took pictures and video-taped a portion of the controlled buy on his work cell phone.

[11] The meeting with the CS and the collection of the drug evidence was captured on the recording equipment.

[12] During Det. Dupre's testimony he referred to Brent Goings as Lt. Goings. By the time of trial, Goings had been promoted to the rank of Captain. Therefore, he is referred to as Captain Goings in this opinion.

[13] Det. Stogner indicated when the officers finished searching the vehicle and collecting the evidence, they allowed Ms. Brumfield to drive back to her residence so she could be present with their daughter, who was a minor, when they searched it.

[14] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8

Dupre found a total of $1,147.00 in the center console, front passenger seat, and inside Ms. Brumfield's purse, and he collected all the evidence.

Officers relocated to the defendant's residence on Torrence Drive. During a search of the residence, Det. Stogner found a light tan-colored powdery substance in a kitchen drawer, which was scraped up and placed into a clear bag for testing. Inside the master bedroom, Det. Dupre found three handguns on a nightstand, a green leafy substance that was suspected to be marijuana on a dresser, and a black bag that contained $600.00 in $100.00 increments. A black scale and a box of sandwich bags along with some cash were also located in the middle dresser drawer in the master bedroom.

Sergeant John Heath Miller, the narcotics unit supervisor for the Louisiana State Police (Troop L), assisted with the search of the defendant's residence. He found a large amount of U.S. currency and loose powder in the bottom of a drawer inside the master bedroom.[15] He also found a small, folded up foil packet of suspected heroin and fentanyl underneath the bed in the master bedroom. Sgt. Miller performed a field test on the substances using a presumptive kit, which tested positive for the presence of fentanyl. Subsequent chemical testing of the evidence collected from the defendant's vehicle and his residence confirmed the substances contained fentanyl.

Under La. R.S. 40:967(A)(1), it is unlawful for any person to knowingly or intentionally distribute fentanyl, which is classified as a Schedule II controlled dangerous substance.[16] The transfer of possession or control, *i.e.*, distribution, is

---

[15] Due to the amount of cash ($5,563.00) recovered during the searches, Det. Stogner had the defendant and Ms. Brumfield both complete a uniform financial data questionnaire. The defendant indicated he cut hair and assisted with lawn service for a living from which he earned $600.00 a week and $7,000.00 thus far that year. His wife indicated she was unemployed and seeking disability.

[16] "Distribute" means "to deliver a controlled dangerous substance ... by physical delivery." La. R.S. 40:961(15). "Deliver" and "delivery" are defined as "the transfer of a controlled dangerous substance whether or not there exists an agency relationship." La. R.S. 40:961(11).

9

not limited to an actual physical transfer between the culpable parties, but may be accomplished by the imposition of a third party. **State v. Smith**, 2006-0820 (La. App. 1 Cir. 12/28/06), 952 So.2d 1, 8, <u>writ denied</u>, 2007-0211 (La. 9/28/07), 964 So.2d 352. To present sufficient evidence of distribution of a controlled dangerous substance (CDS), the State must prove the following elements: (1) delivery or physical transfer of the CDS to its intended recipient; (2) guilty knowledge of the CDS at the time of transfer; and (3) the exact identity of the CDS. **State v. Muse**, 53,345 (La. App. 2 Cir. 9/27/23), 373 So.3d 88, 94.

Further, it is unlawful if an "offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used ... as a dangerous weapon, while committing or attempting to commit a crime of violence or while unlawfully in the possession of or during the sale or distribution of a controlled dangerous substance." <u>See</u> La. R.S. 14:95(E). In order to convict a defendant of illegal possession of a weapon while in possession of a CDS pursuant to La. R.S. 14:95(E), the State must prove: (1) that the defendant possessed within his immediate control a firearm or other instrumentality customarily intended for use as a dangerous weapon, (2) while in possession of, during the sale, or during the distribution of a CDS. **State v. Lattin**, 52,127 (La. App. 2 Cir. 9/26/18), 256 So.3d 484, 488. The question of whether there is sufficient "possession" to convict is dependent on the facts of each case. <u>See</u> **State v. Harris**, 94-0970 (La. 12/8/94), 647 So.2d 337, 338-339 (*per curiam*).

"Possession" under La. R.S. 14:95(E) includes both actual and constructive possession. <u>See</u> **State v. Blanchard**, 99-3439 (La. 1/18/01), 776 So.2d 1165, 1170. In order to prove a violation of La. R.S. 14:95(E), when a defendant is found to be in constructive possession of a firearm while simultaneously in possession of a controlled dangerous substance, the State must prove that there is a nexus between the firearm and the controlled dangerous substance. *Id.* at 1174.

10

Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. **State v. Johnson**, 2003-1228 (La. 4/14/04), 870 So.2d 995, 998. Courts have generally found evidence of constructive possession when a gun is found in an area customarily occupied by the defendant. **State v. Williams**, 2023-506 (La. App. 3 Cir. 2/7/24), 380 So.3d 192, 200. See e.g., **State v. Mose**, 412 So.2d 584, 586 (La. 1982) (gun located in defendant's bedroom sufficient for constructive possession); **State v. Frank**, 549 So.2d 401, 405 (La. App. 3 Cir. 1989) (constructive possession found where gun was found in plain view on the car seat next to the unconscious defendant and defendant was the only occupant of the vehicle). A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. See **State v. Hills**, 451 So.2d 1346, 1347 (La. App. 1 Cir.), reversed on other grounds, 457 So.2d 1183 (La. 1984).

In the instant case, the meeting between Detectives Stogner and Dupre and the CS, and the entire encounter between the CS and McCrory on the date of the controlled buy, was recorded on video and audio tape. A review of the recording shows the detectives gave the CS $100.00 cash to purchase drugs. The CS left the meeting and drove to pick up McCrory. The CS told McCrory he wanted to buy $100.00 in "boyd." In response, McCrory indicated he was going to call the defendant to arrange the deal and exited the vehicle. When he returned, he stated the defendant would meet them at the JZ Quick Stop in ten minutes. After waiting about five minutes, the two headed out.

While they were en route to the Quick Stop, the defendant called McCrory's cell phone and inquired as to his whereabouts. McCrory stated: "I am coming to see you, I am just passing the stop light." McCrory told the CS the defendant was already at the Quick Stop waiting on them, noting he should be in a black car. As they turned into the Quick Stop parking lot, the CS stated: "That's it right there in

11

that black Volkswagen." The CS went inside the store and made a purchase. When he returned to his vehicle, McCrory was waiting for him and stated "He weighted out us a gram." McCrory asked the CS if he had a bag to put it in, to which he responded in the negative. After dropping off McCrory, the CS returned to the undisclosed meeting location and gave the detectives the drugs he had purchased.

Deputy Deyana Sevin works in the St. Tammany Parish Sheriff's Office Crime Lab and is responsible for testing evidence for the presence of controlled dangerous substances. The trial court accepted her as an expert. Deputy Sevin's testing revealed the evidence collected from the controlled buy contained caffeine and fentanyl. Deputy Sevin indicated she received the evidence in a "sealed brown envelope containing one clear plastic bag [with] one piece of paper containing tan colored powder." She noted the evidence she received for testing had a net weight of 0.643 grams. She was unable to render an opinion as to whether that amount was for distribution or personal use.

Given the foregoing, we reject the defendant's challenge of his possession of fentanyl conviction (count one) based on the argument the video does not show the actual drug transaction, and his contention the officers failed to carefully search the CS, as he was able to make a purchase in the convenience store. The audio and video evidence establishes beyond a reasonable doubt that the defendant distributed drugs (fentanyl) to McCrory who, in turn, delivered it to the CS. Furthermore, the State sufficiently proved that the defendant resided at the Torrence Drive residence. Det. Stogner testified that through his investigation he learned that the defendant lived at "19604" Torrence Drive. Det. Stogner indicated he went over the uniform financial data questionnaire with the defendant, who confirmed that the information listed on the questionnaire, including the Torrence Drive address, was correct.

The trial testimony reflects that following a search of the defendant's residence, officers found three guns on a nightstand inside the master bedroom, loose powder in the bottom of a dresser drawer, and a foil packet of suspected drugs underneath the bed inside the master bedroom. Both items, which later tested positive for fentanyl, were in close proximity to the guns found inside the master bedroom, which is an area customarily occupied by the defendant. Because the drugs were found in the master bedroom and not the bedroom that appeared to belong to a teenager, we reject the defendant's contention that the State did not prove the drugs did not belong to another person.

Regardless of the jury's ultimate reasoning, the evidence presented at trial was sufficient to convict defendant of the charged offense, and, as such, it was also sufficient to support defendant's convictions for the responsive offenses of possession of fentanyl and attempted illegal carrying of weapons while in possession of a CDS. See **State v. Taylor**, 2015-1144 (La. App. 1 Cir. 2/10/16), 2016 WL 562674, *5 (unpublished), writ denied, 2016-0457 (La. 3/13/17), 216 So.3d 799.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the factfinder. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*). We cannot say that the jury's determination was irrational under the facts and circumstances presented to it. **Ordodi**, 946 So.2d at 662. Viewing the evidence in a light most favorable to the State, a trier of fact could have rationally concluded beyond a reasonable doubt the defendant was guilty of distribution of fentanyl and that he exercised dominion and control over the guns inside his bedroom that was sufficient to find him guilty of illegal

13

carrying of a weapon while in possession of CDS. For the foregoing reasons, the defendant's assignments of error lack merit.

## PATENT ERROR

Pursuant to La. Code Crim. P. art. 920(2), this court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. **State v. Anthony**, 2023-0117 (La. App. 1 Cir. 11/3/23), 378 So.3d 766, 775, writ denied, 2024-00027 (La. 5/21/24), 385 So.3d 242. After a careful review of the record, we have found two patent errors.

Pursuant to La. R.S. 14:95(E), the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without **the benefit of probation, parole, or suspension of sentence.** The record reflects that the trial court failed to state that the sentences on counts three, four, and five are to be served without the benefit of parole, probation, or suspension of sentence as statutorily mandated. See La. R.S. 14:95(E). However, when a trial court does not mention the restriction of benefits provided in the sentencing statute, such conditions are self-activating pursuant to La. R.S. 15:301.1(A). Therefore, we need not take corrective action. **State v. Boudreaux**, 2023-0993 (La. App. 1 Cir. 4/19/24), 390 So.3d 345, 351 n.1.

Furthermore, the record reflects the trial court advised the defendant: "Article 930.8 of the Code of Criminal Procedure provides that except in certain limited circumstances[,] applications for post-conviction relief must be filed within two years from the date your sentence becomes final."

A defendant generally has two years after the judgment of conviction and sentence have become final to seek post-conviction relief. See La. Code Crim. P. art. 930.8(A). Thus, the trial court provided incomplete advice regarding the prescriptive period for seeking post-conviction relief. However, the trial court's

14

failure to properly advise the defendant has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. See **State v. LeBoeuf,** 2006-0153 (La. App. 1 Cir. 9/15/06), 943 So.2d 1134, 1142-1143, writ denied, 2006-2621 (La. 8/15/07), 961 So.2d 1158. Accordingly, this error is not reversible, and we decline to remand for resentencing.

In the interest of judicial economy, we advise the defendant that Article 930.8(A) generally provides that no application for postconviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. Code Crim. P. arts. 914 or 922. **LeBoeuf,** 943 So.2d at 1143.

**CONVICTIONS AND SENTENCES IN DOCKET NUMBER 150300 AFFIRMED; MISDEMEANOR POSSESSION OF MARIJUANA CONVICTION IN DOCKET NUMBER 150270 REVERSED AND SENTENCE FOR SAID CONVICTION VACATED.**