846 So.2d 778 (2003)
STATE of Louisiana
v.
Rodney JENKINS.
No. 02-0997.
Court of Appeal of Louisiana, Third Circuit.
February 12, 2003.
*779 Wilson Rambo, Attorney at Law, Monroe, LA, for Defendant/Appellee, Rodney Jenkins.
Robert R. Bryant, Jr., District Attorney, Carla S. Sigler, Assistant District Attorney, Lake Charles, LA, for Appellant, State of Louisiana.
Court composed of SYLVIA R. COOKS, JIMMIE C. PETERS, and GLENN B. GREMILLION, Judges.
PETERS, J.
The defendant, Rodney Jenkins, was charged by bill of information with possession of cocaine with intent to distribute, a violation of La.R.S. 40:967(A). A jury found him guilty of attempted possession of cocaine with intent to distribute, a violation of La.R.S. 14:27 and La.R.S. 40:967(A). Because the conviction constituted a third felony conviction, the state then charged the defendant as an habitual offender. The trial court rejected the defendant's motion for judgment of acquittal and initially sentenced him to serve three years at hard labor. The trial court then adjudicated the defendant an habitual offender, vacated the three-year sentence, and sentenced him to serve fifteen years at hard labor without the benefit of probation *780 or suspension of sentence. The defendant appealed, asserting nine assignments of error.
The charge against the defendant arises from a June 30, 1997 search of a Lake Charles, Louisiana residence by officers of the Lake Charles City Police Department. In making the search, the officers seized thirty-five rocks of crack cocaine. The state asserted in the charge before this court that the seized crack cocaine belonged to the defendant.

Assignments of Error Numbers 1, 2, and 3
The defendant filed a motion to quash the bill of information which the trial court rejected. The motion was based on the argument that the state had failed to timely commence his trial. In his first three assignments, the defendant asserts that the trial court erred in denying the motion to quash, in finding that his speedy trial rights had not been violated, and in concluding that a joint motion for continuance had the effect of suspending the time limits for commencing trial.
No trial of a non-capital felony shall commence "after two years from the date of institution of the prosecution." La. Code Crim.P. art. 578(2). Institution of prosecution is accomplished by the filing of either a bill of information or the return of a grand jury indictment. State v. Gladden, 260 La. 735, 257 So.2d 388 (1972). The failure to timely commence trial is a basis for the grant of a motion to quash. La. Code Crim.P. art. 532(7). However, the two-year period may be suspended or interrupted during the pretrial phase of the prosecution. For example, a preliminary plea filed by a defendant has the effect of suspending the limitation periods for commencing trial. La.Code Crim.P. art. 580. Once the time limitation is suspended, the state has at least one year after the ruling on the preliminary plea to commence the trial. Id. Additionally, the time limitations established by La.Code Crim.P. art. 578 are interrupted when "[t]he defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record." La.Code Crim.P. art. 579(A)(3). Once interrupted, the time limitations "commence to run anew from the date the cause of interruption no longer exists." La.Code Crim.P. art. 579(B).
In the matter now before us, the state filed a bill of information on March 9, 1998, charging the defendant with the offense. Therefore, absent a suspension or interruption of the two-year time limitation, the state had until March 9, 2000, in which to commence trial. Trial did not begin until November 26, 2001.
The trial court minutes reflect that, during that two-year period, the trial was set and reset at least seven times. However, the only activities pertinent to this appeal are those which occurred on November 19, 1999, and thereafter. On November 19, the trial court rescheduled the defendant's trial for January 3, 2000. The trial court minute entry for January 3 reflects that the defendant appeared on that day without counsel and announced that he was "available for trial." However, trial did not begin on that day. Instead, on the next day, the defendant again appeared, but this time with counsel. The trial court minutes reflect that the defendant's counsel requested a continuance which the trial court granted. The trial court then rescheduled the trial for March 20, 2000.
In rejecting the defendant's motion to quash the bill of information, the trial court concluded that the January 4, 2000 request for continuance "interrupted the two-year period" for commencement of trial. The defendant essentially argues that the trial court minutes are inaccurate and that he and the state jointly requested the *781 continuance. As a joint motion, the defendant contends that it does not interrupt the two-year period. However, the transcript of the January 4 hearing reflects that, when the defendant's case was called for trial, counsel for the state made the comment, "It's my understanding [the defendant is] going to request a continuance in this matter." Counsel for the defendant responded, "That is correct, Your Honor." At no time did the state join the request for a continuance. Therefore, we reject the defendant's argument on this point.
We do, however, disagree with the trial court classifying the request for a continuance as an interruption of the two-year period. Instead, we interpret it as a suspension. As a suspension rather than an interruption, it had the effect of granting the state a one-year extension in which to commence trial. La.Code Crim.P. art. 580. Regardless of the motion's classification, the defendant's failure to appear for the March 20, 2000 trial is fatal to his argument that the state did not timely commence trial.
The defendant was present in open court on January 4, 2000, when the trial court set the March 20, 2000 trial date. He failed to appear for trial, and, on March 24, 2000, the trial court issued a bench warrant for the defendant based on his failure to appear for trial. After a July 5, 2000 hearing, the trial court found the defendant guilty of contempt of court for his failure to appear on March 20, 2000. Given the fact that he had actual notice of the March 20 setting, the proof of which appears of record, his failure to appear caused the two-year time limitation to "commence to run anew." La.Code Crim.P. art. 579(B). Therefore, the November 26, 2001 trial was timely commenced, and we find no merit in the defendant's first three assignments of error.

Assignments of Error Numbers 4, 5, and 6
In these three assignments of error, the defendant asserts that the trial court erred in denying his motion for judgment of acquittal, that the verdict is contrary to the law and evidence, and that the evidence presented was insufficient to support the jury's guilty verdict. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). The same basic test is applied by the trial court in considering whether to grant a motion for post-verdict judgment of acquittal. La.Code Crim.P. art. 821(B).
Louisiana Revised Statutes 40:967(A)(1) provides that "it shall be unlawful for any person knowingly or intentionally ... [t]o... possess with intent to ... distribute... a controlled dangerous substance ... classified in Schedule II." Cocaine is a Schedule II controlled dangerous substance. La.R.S. 40:964(A)(4). "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended." La.R.S. 14:27(A).
The state presented the testimony of four Lake Charles police officers who participated in the June 30, 1997 search. However, only Officer Reynaldo Sierra testified that he saw the defendant at the residence to be searched. According to Officer Reynaldo, as he and Officer Michael Reid drove up to the residence on *782 the evening of June 30, he observed the defendant standing outside talking with a female who was later determined to be Lynette Edwards. According to Officer Reynaldo, the defendant observed his approaching vehicle and fled the scene on foot. Ms. Edwards fled into the residence.
Officer Reid did not recall observing anyone outside the residence, but did encounter Ms. Edwards after he entered the residence. According to Officer Reid, he informed Ms. Edwards of the search warrant and gave her a copy. He then secured Ms. Edwards and the premises, but did not participate in the search. Officer Fletcher James Idom, III testified that he found the thirty-five rocks of crack cocaine on a dresser in a bedroom area of the residence. He only recalled coming in contact with Ms. Edwards inside the residence.
Officer Todd Chaddick, who was the lead investigator in the case, testified that he entered the residence after Ms. Edwards had been arrested and that he was given the seized cocaine at some point. According to Officer Chaddick, the defendant was the target of his investigation, and he personally had observed the defendant at the residence on at least two prior occasions within the two-week period prior to the search.
The only other evidence directly connecting the defendant to the searched residence was the testimony of Ms. Edwards. She confirmed Officer Sierra's testimony that she and the defendant were outside the residence as the police arrived. According to Ms. Edwards, when they first saw the approaching officers, the defendant "took off," and she ran into the residence. When the officers entered the residence, one of them gave her a copy of the search warrant and handcuffed her. She was later transported to the Lake Charles Police Station, questioned, and released.
Ms. Edwards testified that she and her three children had been living in the residence with the defendant for approximately one and one-half months. According to Ms. Edwards, the defendant owned all of the furnishings in the residence except her telephone. Additionally, she testified that she observed the defendant bring the cocaine into the house.
With the help of Ms. Edwards, Officer Chaddick apprehended the defendant at his mother's residence on July 9, 1997. According to Officer Chaddick, Ms. Edwards directed him to the defendant, who was hiding in the attic. Although Ms. Edwards did not testify concerning her assistance in apprehending the defendant, she did acknowledge that she was present when the defendant was apprehended.
The defendant argues that Officer Sierra's identification testimony was suspect, given his memory of specifics as well as the fact that no other officer observed the defendant at the residence. He also notes that the state failed to produce any direct evidence, other than the testimony of Ms. Edwards; that the defendant physically lived at the residence;[1] and that the misleading statements made by Ms. Edwards to the investigating officers, her criminal record, and her personal reasons for testifying against the defendant makes her testimony unbelievable.
Ms. Edwards admitted that she initially gave the arresting officers a false name and that she had been previously convicted of theft and forgery. She further acknowledged that, at the time of trial, she was on probation and had a pending marijuana *783 charge against her. Additionally, on June 30, 1997, she was pregnant with another man's child and was angry at the defendant because he had admitted to her that he had physically abused her youngest daughter. The abused child is the defendant's biological child.
The jury heard the testimony and evaluated the evidence and lack of evidence concerning the defendant's connection to the searched residence. As stated in State v. Pontiff, 604 So.2d 71, 76 (La. App. 3 Cir.1992),
[t]he jury, sitting as the trier of fact, had the distinct opportunity to view each individual witness's demeanor, listen to their respective testimony, and assess credibility. Their firsthand knowledge of the witnesses's testimony is an immeasurable advantage when compared to our limited review within the four corners of the cold record.
The jury convicted the defendant of attempted possession of cocaine with intent to distribute, and he did not object to the jury being given the choice of that responsive verdict.
[I]f the defendant does not enter an objection [to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict] (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury.
It would be unfair to permit the defendant to have the advantage of the possibility that a lesser "compromise" verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object. Therefore, at least when the defendant fails to interpose a timely objection to a legislatively responsive verdict, this court will not reverse the conviction if the jury returns such a verdict, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged.
State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251-52 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432 (1983).
While the police officers could clearly have better assisted the trier of fact with a more thorough investigation, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded that the state established the essential elements of the crime beyond a reasonable doubt. Since the record fully supports the jury findings, this court will not engage in re-evaluating the credibility of witnesses or reweighing the other evidence adduced at trial. Therefore, we find no merit in these assignments of error.

Assignments of Error Numbers 7, 8, and 9
In these final assignments of error, the defendant asserts that the trial court failed to arraign him on his habitual offender bill, failed to advise him of his right to remain silent and his right to require the state to prove the habitual offender case against him, and failed to present sufficient evidence to establish the validity of one of the underlying convictions. Subsequent to instituting this appeal, the defendant abandoned his assignment that the state failed to arraign him on the habitual offender bill. Additionally, we find the remaining assignments to be without merit.
*784 The record does not indicate that the defendant was advised, at any time, of his right to remain silent or to have the state prove the case against him. However, the defendant remained silent at the hearing on the habitual offender charge as the state introduced both testimonial and documentary evidence. "[O]nly harmless error results from the trial court's failure to advise of rights when the defendant remains silent throughout the proceeding and the state presents competent evidence to prove the existence of the defendant's prior convictions and his identity as the person previously convicted." State v. Williams, XXXX-XXXX, p. 4 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, 911. We find the failure of the trial court to advise the defendant of his right to remain silent and to have the state prove the case against him to be harmless error.
In addition to the conviction for attempted possession of cocaine with intent to distribute, the state identified two prior convictions as the grounds for the habitual offender adjudication: a January 14, 1992 conviction for manslaughter, a violation of La.R.S. 14:31, and a September 14, 1998 conviction for simple escape, a violation of La.R.S. 14:110. The defendant challenges the sufficiency of the evidence presented as to the simple escape conviction only.
In attempting to establish the simple escape conviction as a predicate conviction, the state filed a copy of the guilty plea form executed by the defendant, a certified copy of the bill of information charging him with simple escape, and a certified copy of the minutes reflecting the conviction. Additionally, the state offered as evidence a fingerprint record taken in conjunction with the manslaughter conviction and one taken in conjunction with the simple escape conviction.
Detective Shirley Green of the Calcasieu Parish Sheriff's Office, an expert in the field of fingerprint identification, testified that she compared the two fingerprint records and found that they were identical in all respects except for the date and place of birth. Detective Green then took fingerprint samples from the defendant in open court and compared them to the two fingerprint cards in her possession. In doing so, she concluded that the fingerprints taken from the defendant were the same as those found on the two fingerprint cards. Additionally, Elizabeth Montgomery, a state probation and parole officer, testified that she began supervising the defendant in March of 1997, when he was on parole for manslaughter, and was supervising him when he was convicted of simple escape.
In State v. Shelton, 621 So.2d 769, 774 (La.1993), the supreme court stated:
We have consistently held that in order to enhance a sentence with a prior guilty plea, the State bears the burden of proving the guilty plea was constitutionally taken, and, to meet its burden, the State must introduce a contemporaneous record of a Boykin examination which demonstrates the guilty plea was free and voluntary and which includes a waiver of the three constitutional rights specified in Boykin.

However, the supreme court further stated that "in State v. Halsell, 403 So.2d 688, 690 (La.1981) (emphasis added), we noted that a `colloquy may not be indispensable, as long as the record contains some other affirmative showing to support the plea.'" Id. at 776. The affirmative showing can be satisfied by a written waiver of rights or guilty plea form, or even a minute entry. Id.
The guilty plea form introduced to establish the simple escape conviction was signed by the defendant and is entitled
*785 "WAIVER OF CONSTITUTIONAL RIGHTS AND PLEA OF GUILTY." Included within the form is the following language:
I understand that in pleading guilty to [the charge of simple escape], I stand convicted thereof, and waive the following Constitutional rights:
1) To be tried by a jury.
2) To confront and cross-examine the witnesses who accuse me of the crime charged.
3) To compulsory process of the court to require witnesses to appear and testify for me.
4) The privilege against self-incrimination or having to take the stand myself and testify.
5) To appeal from a verdict of guilt.
6) To be represent[sic] at all times in the proceedings, including appeal, by counsel of my choice or by court-appointed attorney at no cost to me if I lack finances to employ one.
The defendant further stated in the guilty plea form that "I acknowledge that I am guilty of the offense charged and voluntarily waive such rights and enter a plea of guilty thereto."
The court minutes of September 14, 1998, reflect that the defendant was present in open court with counsel and that he submitted the guilty plea form to the trial court after having discussed it with his counsel and after having signed it. The minutes further state that the trial court questioned the defendant concerning the guilty plea form and advised him of "the six constitutional rights as stated on the form." According to the minutes, the defendant responded that he understood his rights as set forth on the form and waived those rights.
We find that the evidence presented by the state to establish that the defendant was the same person who had previously been convicted of simple escape was more than sufficient to meet its burden of proof such that it complied with the standards as set forth in Shelton, 621 So.2d 769. Therefore, we find no merit in this assignment of error.

Errors Patent
Pursuant to La.Code Crim.P. art. 920, we have reviewed the record for errors patent on the face of the record. In doing so, we have found one that requires corrective action.
The court minutes state that the trial court ordered the defendant to serve his sentence without the benefit of probation, parole, or suspension of sentence. However, the sentencing transcript does not mention parole ineligibility. Therefore, we must remand the matter for correction of the trial court minutes.

DISPOSITION
For the foregoing reasons, we affirm the defendant's conviction and sentence in all respects. We remand the matter to the trial court and order that the court minutes be corrected to delete the provision regarding parole ineligibility.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
COOKS, J., dissents and assigns written reasons.
COOKS, J. Dissenting.
The evidence is so weak in this case that the jury had to rely solely on the uncorroborated testimony of a prior convicted felon with a good motive not to tell the truth. She not only was on probation and facing unrelated pending charges, but also faced being charged with the very crime she claimed defendant committed. Defendant *786 also presented evidence that she potentially held a grudge against him. It is sometimes difficult to reconcile one of the aims of the criminal justice systemto punish the guiltywith the constitutional rights of every citizen, including a guilty defendant, to insist that a verdict of guilt is based on proof beyond a reasonable doubt. This difficulty is surely magnified in cases where police officers fall short in performing their investigative role. But, we cannot supply what they failed to gather and the state, as a consequence, failed to produce at trial.
NOTES
[1] Additionally, all of the officers testified that they did not recall seeing any men's clothing during the search process. Apparently the police investigation did not include gathering evidence in the form of utility statements, receipts, or even rental information.