# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1027


**STATE OF LOUISIANA**

**VERSUS**

**TERRY HOWARD SMITH, JR.**


********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 62025
HONORABLE ROBERT E. BURGESS, DISTRICT JUDGE

********

**MARC T. AMY**
**JUDGE**

********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Marc T. Amy, Judges.

**AFFIRMED.**

**Don M. Burkett**
**District Attorney**
**Anna L. Garcie**
**Assistant District Attorney**
**Post Office Box 1557**
**Many, LA   71449**
**(318) 256-6246**
**COUNSEL FOR APPELLEE:**
       **State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**Post Office Box 2775**
**Monroe, LA   71207-2775**
**(318) 387-6124**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **Terry Howard Smith, Jr.**

AMY, Judge.

## Factual and Procedural Background

The defendant, Terry Howard Smith, Jr., allegedly beat his girlfriend, Pamela Leggett (Leggett), with a tribal baseball bat on the side of the road. A witness claimed that when he tried to intervene, the defendant struck him. Following the encounter, the defendant allegedly left the scene in his girlfriend's vehicle.

The defendant was charged by bill of information as follows:

COUNT #1: AGGRAVATED BATTERY UNDER THE DOMESTIC VIOLENCE ACT, La. RS14:34 & 46:2131-2151

COUNT #2: UNAUTHORIZED USE OF A MOVABLE, La. RS14:68

COUNT #3: AGGRAVATED BATTERY, La. RS14:34

Following a bench trial, the defendant was found guilty under count one of second degree battery, a violation of La.R.S. 14:34.1; not guilty on count two; and guilty under count three of simple battery, a violation of La.R.S. 14:35.

For the second degree battery conviction, the trial court sentenced the defendant to three years at hard labor with the Louisiana Department of Corrections, with credit given for time served. The trial court did not impose a sentence for the simple battery conviction.[1] The defendant did not file a motion to reconsider sentence. He now appeals, arguing that the evidence is insufficient to sustain his conviction for second degree battery. For the following reasons, we affirm.

---

[1] The defendant has not appealed his conviction for simple battery. Moreover, an appeal does not lie from this conviction because it is a misdemeanor. La.Code Crim.P. art. 912.1(B)(1).

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

*Sufficiency of the Evidence*

In his sole assignment of error, the defendant contends that Leggett did not suffer an injury which would elevate the offense against her person to the level of second degree battery. He argues that because the State failed to prove an essential element of second degree battery, i.e., that Leggett suffered serious bodily injury, his conviction should be vacated and a verdict of simple battery should be entered.

At the outset, we note that the defendant did not object to the responsive verdict of second degree battery after the trial court's ruling. In *State ex rel. Elaire v. Blackburn*, 424 So.2d 246, 251-52 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983), the supreme court explained:

> The 1982 amendment adding Section C to Article 814 now gives the trial judge discretion, on motion of either side, to exclude a responsive verdict which is not supported by the evidence. Therefore, even if the offense is legislatively designated as responsive by Article 814, the defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. If the court overrules the objection and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict. . . . However, if the defendant does not enter an objection (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury.

2

It would be unfair to permit the defendant to have the advantage of the possibility that a lesser "compromise" verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object. Therefore, at least when the defendant fails to interpose a timely objection to a legislatively responsive verdict, this court will not reverse the conviction if the jury returns such a verdict, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged.

(Footnotes omitted). Thus, the pertinent issue in this case is whether the evidence presented at trial supported a conviction for aggravated battery, the offense charged.

"Aggravated battery is a battery committed with a dangerous weapon." La.R.S. 14:34. Battery is defined as "the intentional use of force or violence upon the person of another. . . ." La.R.S. 14:33.

With regard to sufficiency of evidence, this court stated in *State v. Touchet*, 04-1027, pp. 1-2 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 902:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

> In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In order for this court to affirm a conviction, the record must reflect that the State has satisfied this burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

Leggett testified that she and the defendant began dating in 2003 and that they have a son. She stated that during the course of their relationship, the defendant has hit her on several occasions, "like most of the time every day." Leggett testified that on May 21, 2006, the defendant beat her badly. She recalled that on that day, they went to a nearby town and that they had been drinking. Leggett stated that as she was driving her vehicle, the defendant, who was in the passenger seat, started an argument with her. She described what happened next:

> [The defendant] hit me and to keep from hitting a car head on, I swerved off the road to the right and he was hitting me in the car. He got out of the car and came around to the driver's side, opened the door and he started kicking me and hitting me and I crawled across the seat to the passenger seat trying to get away from him.

According to Leggett, the defendant was hitting her with a green tribal bat which she likened to a "wooden baseball bat." She asserted that he hit her several times and that he "knocked [her] silly."

Leggett testified that she "fell out of the car on the passenger side. And when [she] got off the ground, Perry Dees was there on his motorcycle." She stated that Craig Richardson and his wife subsequently arrived on the scene and Ryan Preston, the driver of the car she avoided hitting, was parked on the other side of the road. According to Leggett, she "started begging them not to leave [her], to call the cops for someone to help [her]." Leggett stated that the Richardsons put her into their car and took her to their house so that she could shower and change clothes. Leggett testified that she was bleeding from her nose and mouth; however, she did not seek any medical attention for her injuries.

Ryan Preston (Preston) testified that on May 21, 2006, he was on his way to his father's house when he saw someone "hitting someone in the car. As I got closer, I

4

could tell there was a girl in the car." According to Preston, "when he drove up, [the defendant] wasn't hitting her with anything. He had nothing in his hands. He was gripping the top of his car with his hands, kicking inside with his feet." Preston testified that he stopped his car and yelled for the defendant to stop. He and the defendant exchanged words. Preston testified that the defendant grabbed something which resembled a stick or a club out of the backseat of his car but later dropped it as he approached Preston's car. According to Preston, "we had words at the car. I had my window rolled down. And he said he wasn't gonna hit me if I stayed in the car so I said, okay, I'm not gonna get out and then he struck the top of my car . . . [with] his hand."

The record indicates that Preston gave a statement to authorities later that day describing what he had witnessed. In his statement, which was introduced into evidence, Preston stated that after he told the defendant to stop beating Leggett, the defendant replied:

> "F--k you" and started running for my car with a baseball bat in one hand. He told me "he wasn't going to hit a b---h sitting in the car." He swung my door open and hollered for me to get out. I made a movement to close my door and he swung at me multiple times only connecting once. After he hit me he was hollering "don't f--k with me I'll kill you!" I drove by in my car and said "now you can answer to the cops." He was steadily hollering at the woman he was beating using harsh statement[s] such as F--k you and I'll kill you!

Preston stated that sometime later, Perry Dees, arrived at the scene and told the defendant to leave, which he did after telling Leggett to get out of the car. Preston noticed that Leggett had "a bruise or two" on her face, but he could not tell if she was bleeding.

Perry Dees (Dees) testified that when he was riding his motorcycle that day, he observed that the defendant had been fighting with Leggett and Preston. Dees stated

5

that he saw the defendant and Leggett arguing, and he noticed that Preston was bleeding in the area of his eye. According to Dees, the defendant had a "ball bat" in his hand and when he drove up, the defendant "held the bat out at me and told me go ahead and get off that bike[.]" Dees testified that he talked to Preston and convinced him to go home. Subsequently, the defendant went to his car, threw the bat through the window, and drove off. Dees testified that Leggett was sitting in the Richardson's car when the defendant left. He described her as looking "kind of red and [swollen] up a little bit in the head and face."

John Brock, Chief of Police for the Village of Converse, testified that he received a call on May 21, 2006 about a disturbance at the intersection of Highway 174 and Highway 171. When he arrived at the scene, Leggett was not there as she had accompanied the Richardsons to their home to clean herself up. She later returned to the scene. According to Chief Brock, Leggett "had black eyes, nose was messed up, blood in her nose, blood in one ear, blood on her clothes, bruises on her leg that she showed me in city hall when she came to do a statement."

At trial, the defendant characterized his relationship with Leggett as "rocky." He stated that on the date in question, he had been driving the car and was "yelling into the car at [Leggett] when [Preston] pulled up." Although he does not remember kicking Leggett, the defendant admitted to "smacking her." However, he alleged that Leggett was also hitting and scratching him.

The defendant stated that when Preston stopped, they exchanged words, and he started swinging at Preston. When Preston grabbed a stick from the compartment of his vehicle, the defendant repeatedly told Leggett to give him the bat, but she did not. The defendant testified that, "I went around to the passenger side, opened the

6

door, grabbed the bat, pointed it at [Preston] and told him to put your stick away.  At that time, that's when Perry Dees and the others had pulled up."  The defendant maintained that "I still had the bat in my hand when Perry Dees told me to get the hell in my car and leave[.]"  According to the defendant, when he reentered the car, Leggett jumped out of the car and claimed that he had hit her.  When she refused his instructions to get in the car, he left.

Given the testimony, we find that the trial court could have found the defendant guilty of aggravated battery.  Witnesses testified that the defendant had a bat in his possession at one point or another during the incident.  Although there was conflicting testimony as to whether the defendant actually struck Leggett with the bat, the trial court apparently found Leggett credible and accepted as true her testimony that the defendant hit her with the bat.  Finding the evidence sufficient to support the offense charged, the evidence will support conviction of the responsive verdict of second degree battery.  *Elaire*, 424 So.2d 246.

Accordingly, this assignment has no merit.

### DECREE

For the foregoing reasons, the defendant's conviction is affirmed.

**AFFIRMED.**

7