STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 08-716

STATE OF LOUISIANA

VERSUS

KATIE SAVOY

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 110725
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of John D. Saunders, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED.**

**James David Caldwell**
**District Attorney - Sixth Judicial District Court**
**P. O. Box 1389**
**Tallulah, La 71282**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Jason Wayne Robideaux**
**Attorney at Law**
**1313 Lafayette Street**
**Lafayette, LA 70501**
**(337) 291-9444**
**Counsel for Defendant/Appellant:**
**Katie Savoy**

**EZELL, JUDGE.**

On April 19, 2006, a Lafayette Parish grand jury found a true bill on an indictment charging Defendant, Katie S. Savoy, with manslaughter, a violation of La.R.S. 14:31. On April 25, the grand jury found a true bill on an amended indictment against Defendant, bearing the same charge for the same incident.[1] On July 27, 2007, the State filed an answer to Defendant's motion for a bill of particulars, noting that the prosecution was based on La.R.S. 14:31(A)(2). That portion of the manslaughter statute proscribes homicides committed without the intent to kill or inflict great bodily harm, when committed pursuant to a felony not enumerated in the murder statutes or pursuant to an intentional misdemeanor directly affecting the person.[2]

Jury selection began on July 30, 2007; on August 6, the trial court ruled on an issue regarding the potential sentences. The State sought review by this court, and on August 6, 2007, in an unpublished writ bearing docket number 07-959, this court reversed, finding the sentencing issue to be premature. On August 9, 2007, the jury found Defendant guilty of the lesser-included offense of negligent homicide.

On October 23, 2007, she filed a motion for post-verdict judgment of acquittal; the court denied it in a written order dated October 30, 2007. On November 9, 2007, after hearing testimony presented by each party, the court sentenced Defendant to five years at hard labor and a $5,000 fine, the maximums allowed pursuant to the conviction. Defense counsel immediately filed a motion for appeal in open court.

On review, Defendant assigns two errors to this court.

---

[1]The amendment corrected the year of the offense from 2004 to 2005.

[2]The provision also proscribes homicide committed when the offender is resisting a lawful arrest, but such a scenario is clearly not at issue in the present case.

1

**FACTS**

On May 26, 2005, at approximately 9:30 a.m., Kelly Leger dropped off the eleven-month-old victim, Lane Leger, at Defendant's house.[3] Defendant was Lane's babysitter. At approximately 9:45 a.m., another mother, Lisa Goulas, dropped off her daughter at Defendant's residence. Goulas noticed that Lane was on the sofa, propped up by pillows and drinking from his bottle. At approximately 2:55 p.m., Paula Verret visited the residence to pick up her granddaughter. She did not see Lane, and she did not see anything out of the ordinary.

At approximately 3:45 p.m., Defendant ran outside, calling for help. At some point, she stated that she left Lane lying on the floor for a few minutes, and when she returned he was unresponsive. In her trial testimony, Defendant presented a similar scenario. Lane received extensive medical treatment but ultimately died.[4]

The medical evidence adduced at trial revealed that Lane had a thirteen-centimeter fracture on the left side of his skull, with cerebral edema and cranial bleeding.

**ASSIGNMENT OF ERROR NUMBER ONE**

In her first assignment of error, Defendant argues the trial court erred by denying her motion for a post-verdict judgment of acquittal. In her motion and supporting memorandum below, Defendant argued that the evidence adduced at trial did not support her conviction for negligent homicide. She argued that the State's theory at trial was that she had intentionally battered Lane and that the record contained no evidence supporting a theory of negligence.

---

[3]As the victim is deceased, we will use his full name, rather than his initials. La.R.S. 46:1844(W).

[4]Lane was taken to a local hospital first then flown to Tulane.

Before this court, she bases her argument on House Concurrent Resolution No. 3 for the 2008 Regular Session. That resolution directed the Louisiana State Law Institute to study La.Code Crim.P. art. 814(C) to determine whether amendments are necessary to clarify the legislative intent behind that article.

The resolution includes the following language:

> WHEREAS, Act No. 791 of the 1985 Regular Session of the Legislature rewrote Code of Criminal Procedure Article 814(C) to make it mandatory that the court exclude a responsive verdict from consideration by the jury if there is no evidence to establish that responsive verdict; and
> WHEREAS, the 1985 amendment to Code of Criminal Procedure Article 814(C) was intended to prevent a jury from receiving or returning a responsive verdict which is not supported by the evidence; and
> WHEREAS, following the 1985 amendment to Code of Criminal Procedure Article 814(C), all responsive verdicts returned by a jury are required to be reviewed on their own merits by the court using the *Jackson v. Virginia* sufficiency of evidence standard;. . . .

Defendant also notes the mandatory language in La.Code Crim.P. art 814(C):

> Upon motion of the state or the defendant, or on its own motion, the court shall exclude a responsive verdict listed in Paragraph A if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense.

According to Defendant, the legislature's 1985 amendment substituted the mandatory language for earlier discretionary language and legislatively overruled *State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983). That case allows an appellate court to affirm a conviction for a responsive verdict that is not necessarily supported by record evidence, in a case where the evidence would have supported a conviction for the charged offense, and the defendant failed to object to the inclusion of the lesser offense in the jury instructions. In the present case, Defendant did not object to the inclusion of negligent homicide in the jury instructions.

3

The State suggests that Defendant's arguments based on the resolution should be disregarded, because it was not passed until after trial and after the motion for acquittal. However, the resolution presented a possible avenue of relief that was not available to Defendant during the trial, or at the time of the motion. Further, some of the resolution's language purports to address the law's intent in 1985, well in advance of the current proceedings. Thus, the possibility exists that Defendant has a viable avenue of relief that she had no way of knowing about during the proceeding below. Also, the State notes Defendant's lack of objection to the inclusion of negligent homicide as a responsive verdict, in the jury instructions.

The supreme court has explained:

> Paragraph C of Article 814, the statute at issue in the present case, was a legislative response to two decisions of this court which involved questions of sufficiency of the evidence when the jury returns a responsive verdict which is legislatively authorized, but is not a truly lesser and included offense. As long as an authorized responsive verdict is a lesser and included grade of the charged offense and the evidence is sufficient to support a verdict of guilty of the charged offense, there is no problem with sufficiency of the evidence for the responsive verdict. However, because Article 814 contains authorized responsive verdicts which are not truly lesser and included offenses, evidence which is sufficient to support a conviction of the charged offense may not support all of the elements of the responsive offense. Further, statutory amendments to the definitions of crimes (especially first and second degree murder) have created situations in which responsive verdicts that had previously been truly lesser and included offenses became merely statutorily authorized responsive offenses whose essential elements were not entirely included in the definition of the greater offense.

> The problem of the sufficiency of the evidence supporting a conviction of a statutorily authorized responsive offense which is not a lesser and included grade of the charged offense was first presented in *State v. Dauzat*, 392 So.2d 393 (La.1980). The defendant, charged with attempted second degree murder, was convicted of the legislatively authorized responsive offense of aggravated battery, which is not a lesser and included grade of attempted murder. The evidence showed that the defendant fired a shot at the victim which missed him, but struck the vehicle in which he was riding. Thus, the record did not establish the essential elements of the offense of aggravated battery, although the evidence might have been sufficient to convict for attempted murder.

This court reversed the aggravated battery conviction because no *battery* upon the *person* of the victim had been proved. *See* Cheney C. Joseph, Jr., *Developments in the Law-Post Conviction Procedure*, 44 La.L.Rev. 477, 483 (1983).

In *State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), there was an attempted first degree murder prosecution that arose during the period when second degree murder by definition included only "felony murders" (unintended killings during enumerated felonies) and first degree murder included only specifically intended killings. In a post-conviction application, the defendant attempted to avail himself of the *Dauzat* rationale, contending that the evidence was insufficient to support the responsive verdict of attempted second degree murder because there was no proof of an enumerated felony which was an essential element of the crime.

This court in a plurality opinion refused to allow the defendant to have the jury consider a responsive verdict which was not supported by the evidence and then raise the issue of sufficiency of the evidence on appeal from a conviction of that lesser offense. The plurality held that the defendant must object at trial to the inclusion of a legislatively authorized responsive verdict which is not supported by the evidence in order to object on appeal to the sufficiency of the evidence supporting the conviction of the lesser offense, as long as the evidence, under the test of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), would have permitted a reasonable juror to convict the defendant of the offense charged.

The *Elaire* decision simply prevented the defendant from deriving the benefit of the long-standing statutory rule that the jury *must* be instructed on *all* statutorily provided responsive offenses and then having the conviction of the responsive offense set aside because the jury reached a compromise verdict which did not fit the evidence presented. The decision sought to reconcile the defendant's statutory right to have a jury consider a legislatively authorized responsive verdict with the state's interest in preventing the defendant from withholding objection to the inclusion of an unsupported responsive verdict and then challenging on appeal the sufficiency of the evidence supporting that compromise verdict.

Prompted by these decisions, the Legislature clarified the trial court's authority to exclude legislatively authorized responsive verdicts which are not supported by the evidence by rewording Article 814C to provide as follows:

> C. Upon motion of the state or the defendant, or on its own motion, the court shall exclude a responsive verdict listed in Paragraph A if, after all the evidence has been submitted, the evidence, viewed in a light most favorable

5

to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense.

The 1982 addition and 1985 revision of Paragraph C were efforts to permit the trial court and the prosecutor to avoid the situation presented in *Elaire* and *Dauzat*, for the same reasons and concerns expressed in the plurality and dissenting opinions. The amendments were not designed to give trial courts and prosecutors the option to strike a lesser offense as a responsive verdict in order to prevent the jury from returning a compromise verdict. Article 814C only authorizes the trial court to delete a lesser offense if a verdict of guilty of the lesser offense would have to be reversed under the *Jackson* standard; the jury may still return a compromise verdict of a lesser offense which is supported by the evidence, even if the evidence also supports a verdict of the charged offense.

*State v. Porter*, 93-1106, pp. 5-9 (La. 7/5/94), 639 So.2d 1137, 1140-42, (footnotes omitted).

Also, we observe three significant footnotes from *Porter*:

9. The dissenting opinion [in *Elaire*] correctly pointed out that the conviction was being affirmed despite an absence of adequate evidentiary support for the offense of which the defendant was *actually* convicted. Of course, the *Elaire* decision was based on the defendant's failure to object to including the unsupported responsive verdict in the list of verdicts given to the jury.

10. *Elaire* clearly would have required reversal if the defendant had objected to inclusion of the offense as a responsive verdict and the jury had returned a verdict convicting of that offense which was not supported by the evidence. As one commentator stated:

What *Elaire* approves as legitimate is the jury's power to ignore the evidence and enter a "compromise" verdict. To the extent that the defendant acquiesces in the submission of the compromise verdict which does not fit the facts, he is bound by that decision.

Cheney C. Joseph, Jr., *Developments in the Law: Post Conviction Procedure*, 44 La.L.Rev. 477, 485 (1983).

11. The following comments indicate the Legislature's intent to codify *Elaire*:

(a) The 1985 amendment to Paragraph C incorporates the result in *State v. Henry*, 449 So.2d 486 (La.1984) and *State ex rel Elaire v. Blackburn*, 424 So.2d 246 (La.1982). Elaire (a plurality opinion) held that defendant's failure to object to the sufficiency of evidence

> to support a responsive verdict precluded defendant from objecting successfully to sufficiency of evidence to support the responsive verdict as long as the evidence was sufficient to support a conviction for the offense charged. The court noted the addition of Paragraph C. The standard for review under Elaire is the Jackson standard (*Jackson v. Virginia*, 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979)), not the "no evidence" standard. Therefore, the substitution of language was recommended.
>
> (b) In Henry, the trial court on its own motion decided to strike the responsive verdict as unsupported by the evidence. The supreme court affirmed. This amendment merely recognizes that authority.

La.Code Crim.Proc. art. 814C, Comments-1985, cmt. (a) and (b).

*Id.* at 1141-42 (alteration in original).

We find that *Porter* demonstrates that *Elaire* was good law at that time, some nine years after the 1985 amendment at issue. Also, the opinion discussed at length the legislative intent behind La.Code Crim.P. art. 814(C) and did not determine that it legislatively overruled *Elaire*. Rather, the *Porter* court indicated that Article 814(C) codified *Elaire*. Further, Louisiana courts, including this one, have continued to cite *Elaire* favorably, while affirming compromise verdicts. *See, e.g., State v. Smith*, 07-1027 (La.App. 3 Cir. 3/5/08), 978 So.2d 545.

As for H.C.R. No. 3, we note that while a resolution may be persuasive, it is not law. Also, by its own terms, the resolution merely refers the issue of legislative intent behind the 1985 amendment of La.Code Crim.P. art. 814(C) to the Louisiana State Law Institute for study. Finally, its reference to the legislative intent in 1985 is merely interpretive; as a practical matter the 2008 legislature is in no position to know the intent of the 1985 legislature.

As the supreme court has explained:

> Counsel for plaintiffs did not file a brief in this Court but stated upon oral argument here that plaintiffs stood on the representations contained in their application for writs and in their original brief in the

Court of Appeal; turning, therefore, to the application, it is said that "the principal error of constitutional law committed by the Court [of Appeal] in its opinion in this case was the action of the Court in completely ignoring the provisions of House Concurrent Resolution Number 48 of the Regular Session of 1958 even though the Court felt, apparently, that the Resolution was a definitive expression as to the intent of the Legislature in enacting Act 233 of 1956," and that the reason for such action on the part of the Court of Appeal was "an erroneous holding that said Resolution constituted an unconstitutional entrenchment upon the jurisdiction of the judiciary.". . .

The above reasoning in its initial phase ignores two cardinal principles, by assuming (a) that Concurrent Resolution No. 48 adopted by both Houses of the Legislature of 1958, a mere declaratory resolution approved without the formalities prescribed as essential to the passage of a law, must be given legal force and effect as a definitive expression of the legislative will with respect to an act adopted at a previous session, and (b) that it is within the province of the Legislature to construe its earlier enactments. To interpret laws is not a legislative, but a judicial function, and this fundamental rule of constitutional law has not only been uniformly observed in the pronouncements of the courts of this State but has been ennunciated [sic] by the highest tribunals in numerous other States of the Union [.]

*State Licensing Bd. for Contractors v. State Civil Service Commission*, 240 La. 331, 335-39, 123 So.2d 76, 77-78, (1960) (footnotes omitted)(first alteration in original).

We observe the resolution at issue in *State Licensing Board* suffered the additional infirmity of having been passed while the litigation was pending. However, the opinion states basic principles that provide guidance for the present case. These principles, combined with the fact that 2008 concurrent resolution merely calls for study by the Law Institute, militate against Defendant's argument.

Further, we observe that the result sought by Defendant would eliminate compromise verdicts from Louisiana criminal law. We find that a concurrent resolution, which has not gone through the full formalities needed to pass or amend a statute, should not form the basis of such a momentous change. For the reasons discussed, Defendant's argument, based upon the concurrent resolution, lacks merit.

8

The remainder of Defendant's argument assumes that this court will have found in her favor on the *Elaire* issue. Thus, her argument alleges the evidence did not support a finding of criminal negligence. Her briefs do not challenge the evidence insofar as it supports the greater crime charged. However, we will proceed with an analysis of the evidence supporting manslaughter, out of an abundance of caution.

Defendant argues the trial court erred by denying her a post-verdict judgment of acquittal. This court has explained the basic analysis:

> In these three assignments of error, the defendant asserts that the trial court erred in denying his motion for judgment of acquittal, that the verdict is contrary to the law and evidence, and that the evidence presented was insufficient to support the jury's guilty verdict. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). The same basic test is applied by the trial court in considering whether to grant a motion for post-verdict judgment of acquittal. La.Code Crim.P. art. 821(B).

*State v. Jenkins*, 02-997, pp. 4-5 (La.App. 3 Cir. 2/12/03), 846 So.2d 778, 781, *writ denied*, 03-737 (La. 9/5/03), 852 So.2d 1025.

In her briefs, Defendant acknowledges the medical testimony of three physicians that Lane died of blunt trauma to the head that was inconsistent with an accident. She does not dispute these conclusions. Since there were no eyewitnesses to the fatal blow, Defendant's conviction was based upon circumstantial evidence. Thus, the State was required to exclude every reasonable hypothesis of innocence. La.R.S. 15:438. Thus, the gist of the State's case, as the court noted later during sentencing, was that Defendant was the only adult in the house when the injury was inflicted. Since Defendant's briefs appear to acknowledge the evidence supporting

9

the original manslaughter charge, we will not conduct an exhaustive analysis of the trial record. However, the core evidence will be addressed.

At trial, Detective Scott Stevens testified that Defendant stated to him that when Lane's mother dropped him off at 9:00 a.m., he seemed to be fine. Further, Defendant stated she laid the baby down for a nap at 10:00 a.m., and at noon, he woke up. She then fed him rice and gravy and noted that she did not leave him unattended while he was eating. Lane then played in the living room with other children. Defendant told Stevens that one of the other children was picked up by her mother at 1:00 p.m. After that, Defendant laid another baby down for a nap, then she watched a children's video with Lane and another child.

According to Stevens, Defendant told him that Lane started another nap before 2:00 p.m. At 3:00 p.m., when one of the other children was picked up by his grandmother; Lane was still asleep. Defendant then woke Lane and the other child, and fed them snacks; she stated to Stevens that Lane ate well. However, she also said that Lane did not seem energetic after his nap. She then laid the baby down on the floor to change his diaper; she then left the room to go get wet-wipes and a fresh diaper. She briefly paused in her son's room to watch a portion of a children's show. When she returned to change Lane's diaper, he was lethargic. She told Stevens that her attempts to revive the baby were fruitless, so she ran outside for help. She gave a similar version of events to EMT Alison Romero, to Lane's mother, and to her neighbor Lisa Goulas. She also gave a similar account of events when she testified at trial.

The lead investigator, Detective Alex Montgomery III, testified that Dr. Joel Carney performed the autopsy and estimated the injury occurred from zero to four hours before Lane was discovered to be lethargic. Thus, for purposes of the

10

investigation, Montgomery focused on events between approximately noon and 4:00 p.m. on the day of the offense.

Dr. Carney testified the cause of death was blunt force trauma to the head. As mentioned earlier in this memorandum, the left side of Lane's skull had a thirteen-centimeter long fracture. There was also a subdural hematoma (collection of blood), and cerebral edema (swelling). Dr. Carney further testified the injuries were not consistent with a fall and could not have been inflicted by a child. Also, the injury was inconsistent with "any form of normal behavior" after the injury. In other words, the baby would not have been holding a bottle or eating lunch after receiving such a fracture. The doctor also testified that the symptoms would have been immediately apparent; it would not have taken four hours for them to manifest.

Although a microscopic analysis of the injuries allowed for a longer time frame of ten and one-half hours, Dr. Carney reiterated that Lane would not have been acting normally after receiving the blunt force trauma. Since Defendant's neighbor, Ms. Goulas, testified that Lane seemed normal and healthy at 9:45 a.m., the injury must have occurred at some time after that.

Dr. Paul McGary, a forensic pathologist and neuropathologist from New Orleans, testified that he conducted a post-mortem examination of the Victim's brain, dura (brain covering), spinal cord, and eyes. These organs were forwarded by Dr. Carney. Dr. McGary's opinion regarding cause of death comported with Dr. Carney's. However, Dr. McGary testified that the injury would have occurred within an hour of the Victim's arrival at the hospital. Like Dr. Carney, he testified the baby would not have been acting normally after receiving such a blow and would have become immediately unresponsive. Dr. Scott Benton, a pediatrician from New Orleans, shared this view.

Thus, the record establishes the Victim died due to a major blow to his head. Although no eyewitnesses testified, the medical evidence indicated that the injury occurred within a limited time period on the day of his death. The only person with the baby during that time period, who was capable of inflicting such a blow, was Defendant. We find the evidence discussed would have supported the greater crime charged, manslaughter. Apparently, the jury elected to return a compromise verdict; as discussed earlier, such a verdict is permissible pursuant to current jurisprudence. For the reasons discussed, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In her second assignment, Defendant argues the record does not support her conviction for negligent homicide. She contends the evidence adduced by the State was based on the theory that the offense was intentional. This argument assumes that this court will agree with her argument in the first assignment that *Elaire* is invalid. Since we have concluded that *Elaire* is still good law, the assignment clearly lacks merit.

## CONCLUSION

Defendant's conviction is affirmed.

**AFFIRMED.**