STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

15-720

STATE OF LOUISIANA

VERSUS

KURT DWAYNE MILLER

**********
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 10-K-4607
HONORABLE A. GERARD CASWELL, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and James T. Genovese, Judges.

**AFFIRMED.**

Elbert Lee Guillory
633 E. Landry Street
Opelousas, LA 70570
(337) 942-6328
**ATTORNEY FOR DEFENDANT/APPELLANT:**
  **Kurt Dwayne Miller**

Hon. Earl B. Taylor
District Attorney, Parish of St. Landry
Jennifer M. Ardoin
Assistant District Attorney
P.O. Drawer 1968
Opelousas, LA 70571
(337) 948-0551
**ATTORNEYS FOR APPELLEE:**
  **State of Louisiana**

**COOKS, Judge.**

Kurt Dwayne Miller (Defendant) was charged by grand jury indictment with the second degree murder of his girlfriend, Laura Coates (Laura), a violation of La.R.S. 14:30.1. The jury found Defendant guilty of negligent homicide, a violation of La.R.S. 14:32. Defendant filed a motion for post-verdict judgment of acquittal which the trial court denied. The trial court sentenced Defendant to serve five years at hard labor and pay all court costs. Defendant appeals his conviction asserting as his only assignment of error that the evidence was insufficient to convict him of the lesser offense.

Defendant and Laura lived together for almost three years before Laura's death on December 20, 2009. At about 10:00 p.m. on December 19, 2009, a Port Barre police officer stopped Defendant for speeding on Highway 190 in St. Landry Parish, Louisiana. Defendant was communicating on his cellular phone with a 911 emergency dispatcher at the time he was stopped by an officer. Laura was in Defendant's car, unconscious. The officer and Defendant removed Laura from the vehicle and attempted to administer cardiopulmonary resuscitation (CPR) on the roadside. An ambulance arrived within minutes and transported Laura to Opelousas General Hospital. When the ambulance arrived at the hospital Laura was unresponsive. She had suffered multiple injuries including a fractured lumbar vertebra, broken ribs, and serious trauma to her head causing internal bleeding. As a result of the bleeding Laura's brain was swelling and all efforts to save her life failed. She died in the early morning hours of December 20, 2009.

Dr. Russell Pavich, St. Landry Parish Coroner, determined Laura's death was a homicide. He concluded Laura died as a result of multiple injuries including closed head trauma. Dr. Nicole Lafleur, the treating physician who attended Laura

in the emergency room, also determined the cause of Laura's death was closed head trauma. Dr. Joel Carney, a pathologist, testified Laura suffered a number of blunt-force injuries, including traumatic injuries to her head, throat, abdomen, spine, and broken ribs. Dr. Carney also opined Laura's injuries were less than thirty-six hours old at the time of her death. Defendant offered two doctors as expert witnesses who questioned the findings of the State's three medical witnesses. He asserted Laura died as a result of drug and alcohol abuse based on the presence of various drugs and alcohol found in her system at the time of her death.

Defendant testified in his own defense and gave his version of events on the day Laura died. According to Defendant, he and Laura were living together at the time of this event. He testified Laura suffered from an old back injury that resulted in her taking a number of different medications. Laura had been hospitalized on previous occasions for drug overdose of prescription drugs as well as drugs not prescribed to her. Defendant also asserted Laura mixed alcohol with drugs and that her drug use was an ongoing issue in their relationship. He also testified he had revived Laura on previous occasions upon finding her at home unconscious. Defendant maintained that on the day of this incident he found her when he returned home, shortly after dark, from visiting various friends and running errands. He claimed he found Laura sitting in an odd position on the floor, drooling and not breathing. He explained that he placed her flat on her back and threw water on her in an attempt to revive her. He testified he heard Laura inhale, which prompted him to shake her, scream at her, and then carry her outside to expose her to fresh air. According to Defendant's testimony, Laura was not regaining consciousness despite these efforts. He asserts that at this time he

2

stumbled with Laura and fell, causing her to strike her head on the headlight of the truck parked in the yard.  He picked her up, continued walking with her, and slapped her face to revive her.  He claims she eventually regained consciousness and talked to him while they were sitting on the steps outside the residence, but her speech was slurred.  After helping her to go back inside the residence he claimed he called her mother and, while doing so, heard a "thump," whereupon he found Laura sprawled on the floor and unresponsive.  According to Defendant he then removed her wet clothes, put dry clothing on her, and dragged her out to his truck.

Defendant also testified, when the ambulance arrived on the roadside to attend Laura, the paramedics dropped her before placing her on their board and putting her into the ambulance.  This testimony was contradicted by all witnesses at the roadside scene.

**Error Patent**

In accordance with the provisions of  La.Code Crim.P. art. 920, all appeals of criminal convictions are reviewed for errors patent on the face of the record.  We find there is one such error in this proceeding.  The record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief, as required by La.Code Crim.P. art. 930.8.  We, therefore, direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8, by sending the appropriate written notice to Defendant within thirty days of the rendition of this opinion and to file written proof in the record that Defendant received said notice.  *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

3

**Legal Analysis**

Defendant argues the evidence was insufficient to support his conviction for the responsive verdict of negligent homicide. He was charged with second degree murder, defined in La.R.S. 14:30.1(A)(1) as: "[T]he killing of a human being: … [w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" Under the provisions of La.Code Crim.P. art. 814(A)(3), negligent homicide is a responsive verdict to a charge of second degree murder. At the time of this offense, negligent homicide was defined in La.R.S. 14:32(A)(1) as: "The killing of a human being by criminal negligence[,]" and criminal negligence was defined in La.R.S. 14:12 as follows:

> Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.

At the hearing on Defendant's motion for a post-verdict judgment of acquittal, the trial court found the evidence supported the verdict of negligent homicide. On appellate review, a conviction for a lesser offense will be upheld if the evidence supports a conviction for the greater offense originally charged. *State v. Savoy*, 08-716 (La.App. 3 Cir. 12/10/08), 999 So.2d 285, *writ denied*, 09-509 (La. 11/20/09), 25 So.3d 785. Defendant's sufficiency of evidence claim is reviewed on appeal under a well-established analysis:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact

finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The State presented three medical experts whose testimony indicated Laura died from multiple traumatic injuries intentionally inflicted, not accidentally, and that her death was not the result of drugs and alcohol. Dr. Pavich, the parish coroner, testified the victim's death was a homicide involving multiple injuries, including closed head trauma. The emergency room physician who treated Laura, Dr. Lafleur, likewise testified the cause of death was head trauma. Dr. Joel Carney, a pathologist, testified the victim suffered a number of blunt-force injuries and her death did not result from the various drugs found in her system. He noted blunt-force traumatic injuries to her head, throat, abdomen, and a vertebra. He also noted she had broken ribs. He acknowledged Laura's broken ribs could have been related to the administration of CPR, but his and other expert testimony were to the effect that these injuries were caused by significant force such as a heavy tackle or an auto accident, not accidental dropping. Moreover, all witnesses at the scene testified Laura was not dropped as Defendant claimed.[1] Dr. Carney testified that two-fifths of Laura's blood volume was in her abdominal cavity. He also stated her injuries were less than thirty-six hours old.

Two doctors called by Defendant questioned the findings of these expert medical witnesses. Dr. Patrick Gillespie, an emergency room physician, opined

---

[1] These witnesses included Ward Galland, a paramedic, Cody Rink, the ambulance driver, and Johnathan Chad Stelly, a former Port Barre police officer.

Laura's death resulted from a combination of intoxication, abnormal liver function, and multiple injuries. Dr. Emil Laga, a pathologist, opined Laura died as the result of a drug overdose. Dr. Gillespie did not refute Dr. Carney's findings regarding blood in the victim's abdomen, while Dr. Laga maintained that Dr. Carney's report did not state two-fifths of the victim's blood volume was in her abdomen. Nevertheless, both Dr. Gillespie and Dr. Laga agreed that Laura suffered a significant amount of blood loss due to her traumatic injuries.

The State also presented testimony from two witnesses present in the hospital emergency room attending Laura. Nurse Jason Vidrine testified Defendant told him he had hit Laura in the side of the face while trying to revive her and then asked him whether that "would show up on X-rays if he had hurt her." Dr. Lafleur testified to a similar conversation with Defendant in the emergency room. Additionally, evidence was presented demonstrating that some of Laura's hair was found in the headlight of a truck parked at the couple's residence, as well as on the steps and inside the house. Expert testimony established the hair was Laura's and it was removed by force as evidenced by the amounts found at the scene.

Viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could reasonably find the evidence supports a conviction for second degree murder. We cannot disturb the jury's determinations of credibility where the record, as here, includes more than sufficient evidence from which the jury could conclude the State proved the essential elements of negligent homicide beyond a reasonable doubt. Defendant admitted to being present with the victim for an extended period of time, aware that she was in extremis, but did not call an ambulance or seek medical attention for several hours. Defendant's own testimony

6

places him present with the victim during, or at least proximate to, the time her fatal injuries were inflicted. Three medical experts testified Laura's injuries were intentionally inflicted, not accidentally, and were inflicted with much force. Defendant was stopped in a car with the unresponsive victim who died as a result of multiple blunt force traumatic injuries inflicted by heavy blows. The jury could reasonably conclude the State's evidence contradicted Defendant's assertion that Laura died as a result of drugs and alcohol.

Defendant's claim that Laura suffered such traumatic injuries as a result of being dropped at the roadside scene is an implausible attempt to provide a non-culpable explanation for Laura's serious multiple injuries and is contradicted by three medical experts. Defendant's question to the nurse and E.R. doctor about whether his striking Laura in the face would show up on X-rays certainly can be deemed suggestive of some level of guilty knowledge. It may be the jury reached a compromise verdict, but such a verdict is valid given the evidence presented would have reasonably supported a conviction for second degree murder. Defendant's conviction is affirmed.

**AFFIRMED.**